## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CARMEN DANIELLE MORA
SANCHEZ, on behalf of herself and
all others similarly situated,

      Plaintiff,

v.                                   Case No. 3:21-cv-372-TJC-LLL

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, HIDAY & RICKE, P.A.,
JEFF RICKE, an individual,
ROBERT HIDAY, an individual,
and JENNIFER REISS, an
individual,

      Defendants.

_____

## O R D E R

This class action case arises out of a challenge to Defendants' debt collection practice of seeking to suspend drivers licenses of judgment debtors. The case is before the Court on Plaintiff Carmen Danielle Mora Sanchez's Motion for Summary Judgment on Count IV of the Amended Complaint. (Doc. 72). Defendant Hiday & Ricke, P.A. filed a response (Doc. 86), and Defendant State Farm Mutual Automobile Insurance Company filed a supplemental response (Doc. 85). Sanchez replied. (Doc. 89). Also before the Court are Defendants State Farm, Hiday & Ricke, Jeff Ricke, Robert Hiday,

and Jennifer Reiss's Motions to Dismiss. (Docs. 38, 39). Sanchez responded (Docs. 44, 45), Defendants replied (Docs. 47, 49), and Sanchez sur-replied (Docs. 50, 51).

## I. BACKGROUND

### A. Facts

Sanchez is a judgment debtor to State Farm as a result of her liability in an automobile accident. At the time of the accident, Progressive Insurance Company insured Sanchez and State Farm insured the other driver. (Docs. 72-3 at 2; 72-22 at 2–3). After State Farm paid its insured's property damage claim, it hired Hiday & Ricke to enforce its subrogation right against Sanchez. (Doc. 72-4 at 2). Jeff Ricke, Robert Hiday, and Jennifer Reiss are lawyers at Hiday & Ricke. (Doc. 34 ¶¶ 7–9). On or about April 19, 2016, Hiday & Ricke learned of Sanchez's policy with Progressive, which included $10,000 in property damage coverage. (Doc. 72-5 at 5). On April 28, 2016, Hiday & Ricke sent Sanchez a letter stating:

> The above referenced claim in the amount of $16,766.14 has been referred to this firm from State Farm Mutual Automobile Insurance Company. This claim is the result of property damages that occurred October 30, 2015. Our investigation reveals that you were responsible for the damages and either you were not insured or your insurance company is refusing to pay.
>
> Please be advised that if we are permitted to do so under the facts of this case, we may seek to suspend your driver's license and tag registration.

2

(Doc. 72-4 at 2) (emphasis added). That same day, Hiday & Ricke sent a similar letter to Progressive. (Doc. 72-6 at 2). The letter stated that Hiday & Ricke sought $16,257.98 on behalf of State Farm plus interest ($258.16) and expenses ($250). Id. The letter also said: "[w]e are aware that your insured has $10,000.00 in property damage coverage" and that "[o]ur client is not accepting the pro-rata offer of $8,342.66." Id. The letter also warned that if the excess portion of the claim did not settle, Hiday & Ricke would proceed with litigation. Id. No settlement materialized, so on May 25, 2017, State Farm filed suit through Hiday & Ricke. (Doc. 72-3).

On March 9, 2018, Sanchez, Progressive, and Hiday & Ricke (on behalf of State Farm) mediated and entered into a stipulation where Progressive agreed to pay the $10,000 property damage limit and Sanchez agreed to pay $4,000 to be made in monthly payments of $166.67 starting March 15, 2018, until the total sum was paid. (Docs. 72-8 at 2; 72-9 at 2). The court approved the stipulation and Progressive paid the $10,000. (Docs. 72-5 at 6; 72-9 at 2). Sanchez made payments until she defaulted on her January 15, 2019 payment. (Doc. 72-10 at 3). On January 31, 2019, Hiday & Ricke filed a Motion for Final Judgment, and the court entered a final judgment in the amount of $5,803.92 on February 6, 2019. (Docs. 72-10 at 2; 72-11 at 2).

On February 11, 2019, Hiday & Ricke sent Sanchez the following letter:

3



**Warning**

Dear Carmen Danielle Mora Sanchez:

      Soon we will notify the State of this unpaid claim and request that they suspend your driving and registration privileges.  If your license is suspended, you may be required to carry SR22 insurance.

**Contact our office immediately at 877-235-0060 to avoid suspension of your license.**

Hiday & Ricke, P.A.

(Doc. 72-23 at 2). On March 8, 2019, Hiday & Ricke sent a letter with the final judgment attached to the Bureau of Financial Responsibility requesting the suspension of Sanchez's license. (Doc. 72-25 at 2–4). On April 22, 2019, Florida's Department of Highway Safety and Motor Vehicles (DMV) suspended Sanchez's license. (Doc. 72-26 at 2). On May 6, 2019, Sanchez's counsel sent a letter to the DMV stating that Sanchez's license was improperly suspended and requesting the DMV to reinstate her license. (Doc. 72-18 at 2–8). On May 9, 2019, the DMV reinstated Sanchez's license. (Doc. 72-19 at 2). Hiday & Ricke have engaged in similar practices with many other judgment debtors. <u>See</u> (Doc. 87-1) (listing licenses that Hiday & Ricke requested suspension of); (Doc. 72 at 16).

## B. Procedural Posture

On April 7, 2021, Sanchez filed her class action complaint (Doc. 1), and a couple of months later, Sanchez voluntarily amended her complaint (Doc. 34). Sanchez brings this action on behalf of:

> All Florida judgment debtors whose driving privileges were suspended or revoked by the DMV after Defendants sent a notice and/or request for suspension pursuant to Fla. Stat. § 324.11 and § 324.121, and where the judgment debtor had the required amount of insurance pursuant to Fla. Stat. § 324.021(7) at the time of the accident.

(Doc. 34 ¶ 73). Sanchez alleges four counts on behalf of the class: Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d) (Counts I, II – all Defendants); Abuse of Process under Florida Law (Count III – all Defendants); and Relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. (Count IV – Hiday & Ricke). Id. ¶¶ 80–153.

Defendants moved to dismiss all counts except Count IV. (Docs. 38, 39). In the motions to dismiss, as a threshold issue, Defendants argue that their actions were permissible under Chapter 324, the Florida statutory scheme at issue in Counts I–III. Sanchez disagrees. The Court held a hearing on the motions to dismiss, at which it became evident that to properly consider Defendants' arguments regarding Counts I–III the Court would have to consider the merits of Count IV. (Doc. 60 at 66:14–24). In Count IV, Sanchez seeks "a declaratory judgment from this Court on whether the 'unless and until'

5

language regarding the duration of the license suspension set forth in Fla. Stat. § 324.131 for unpaid judgments precludes Hiday & Ricke from requesting that the DMV suspend the license of judgement [sic] debtors who had the required insurance at the time of the accident." (Doc. 34 ¶ 152). At the hearing on Defendants' motions to dismiss, the Court decided to defer ruling on the motions to dismiss and move forward with summary judgment on Count IV. (Doc. 60 at 75:3–13). The Court allowed limited discovery on Count IV because argument at the hearing revealed that the statute may not operate as written. Id. at 68:15–69:17.[1] After deciding the motion for summary judgment, the Court will consider Defendants' previously deferred motions to dismiss.

## II. MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." All evidence must be construed in a light most favorable to the non-movant. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014). Defendants raise several jurisdictional and procedural arguments in addition

---

[1] Even though Count IV was brought only against the collection firm Hiday & Ricke, the Court permitted State Farm to file a supplemental response to the motion for summary judgment. (Doc. 84).

to their arguments on the merits of Count IV. The Court will address each issue in turn below.

## A. Federal Jurisdiction

State Farm[2] challenges the Court's jurisdiction to rule on Sanchez's motion for summary judgment. The Court addresses this argument first to confirm it has jurisdiction over the case.

State Farm argues that the Court must first address any motions to dismiss that may affect the Court's subject matter jurisdiction. (Doc. 85 at 3). State Farm's argument implies that if the Court dismissed Sanchez's RICO claims that it would no longer have subject matter jurisdiction over the remaining claims, including Count IV. Id. at 2–3. In support, State Farm cites an unpublished Eleventh Circuit case in which the Eleventh Circuit affirmed a district court's dismissal of a plaintiff's declaratory judgment claim because the district court had also dismissed the plaintiff's federal claims. Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc., 707 F. App'x 576, 584 (11th Cir. 2017). However, the Eleventh Circuit never analyzed whether supplemental jurisdiction over the declaratory judgment action was appropriate.[3] See id.

_____

[2] Hiday & Ricke adopts all of State Farm's arguments. (Doc. 86 at 13).

[3] It is not clear if the district court considered whether supplemental jurisdiction would be appropriate over the declaratory judgment claim. Black Diamond Land Mgmt., LLC v. Twin Pines Coal Co., Inc., No. 2:14-CV-02333-RDP, 2016 WL 3617974, at *17–18 (N.D. Ala. July 6, 2016), aff'd sub nom., Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc., 707 F. App'x 576

Sanchez's amended complaint is predicated on federal question and supplemental jurisdiction. See (Doc. 34). Section 1331 states that: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As claims based on federal law, Sanchez's RICO claims fall squarely within the Court's original federal question jurisdiction. The RICO claims are not devoid of merit or frivolous. See Household Bank v. JFS Grp., 320 F.3d 1249, 1254 (11th Cir. 2003) (internal citations and quotation marks omitted) ("The dismissal of a federal-question claim for lack of subject-matter jurisdiction is justified only if that claim were so attenuated and unsubstantial as to be absolutely devoid of merit, or frivolous."). Further, the Court's jurisdiction over the case continues even if the Court ultimately dismisses Sanchez's RICO claims with prejudice.[4] See Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1242–43 (11th Cir. 2007) ("A district court therefore has the discretion to continue to exercise jurisdiction over state law claims in a case even after dismissing the federal claim that created the original jurisdiction.").

---

(11th Cir. 2017). The district court ultimately declined supplemental jurisdiction over the state law issues. Id.

[4] As discussed infra, at this time the Court is dismissing Sanchez's RICO claims without prejudice, with leave to amend.

It is true that "[t]he federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (1976), does not expand federal jurisdiction; the Act merely creates a new remedy in cases or controversies for which an independent basis of federal jurisdiction exists." First Fed. Sav. & Loan Ass'n of Lake Worth v. Brown, 707 F.2d 1217, 1220 (11th Cir. 1983) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950) and Commercial Metals Co. v. Balfour, Guthrie & Co., 577 F.2d 264 (5th Cir. 1978)). Here, Count IV has an independent basis of federal jurisdiction: supplemental jurisdiction. Supplemental jurisdiction is predicated on 28 U.S.C. § 1367, which directs:

> (a) Except as provided in subsections (b)[5] and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have <u>original jurisdiction</u>, the district courts shall have supplemental jurisdiction <u>over all other claims</u> that are <u>so related</u> to claims in the action within such original jurisdiction <u>that they form part of the same case or controversy</u> under Article III of the United States Constitution. . . .

(emphasis added). Count IV is related to claims in the action within the Court's original jurisdiction such that they form part of the same case or controversy. Further, nothing in the Declaratory Judgment Act precludes the exercise of supplemental jurisdiction. See 28 U.S.C. §§ 2201–02. While § 1367(c)[6] provides

---

[5] Subsection (b) of § 1367 does not apply here because it regards cases filed solely under 28 U.S.C. § 1332 (diversity jurisdiction).

[6] Subsection (c) states:

(c) The district courts <u>may</u> decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

the Court discretion to decline supplemental jurisdiction, the Court finds it imprudent to do so given the interplay between Count IV and the remaining federal and state counts. The Court has subject matter jurisdiction over Count IV.

## B. Private Right of Action

State Farm argues that the Court cannot issue a declaratory judgment on Count IV because the state law statutory scheme does not contain a private right of action. (Doc. 85 at 3). The Declaratory Judgment Act instructs:

> In a case of <u>actual controversy</u> within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added). This case presents an actual controversy between parties having adverse legal interests. See <u>GTE Directories Pub. Corp. v. Trimen Am., Inc.</u>, 67 F.3d 1563, 1567 (11th Cir. 1995).

---

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c) (emphasis added).

The Declaratory Judgment Act provides substantial discretion to courts. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). However, that discretion is not unlimited. "Many courts, including the Eleventh Circuit, have held that a claim for declaratory relief must be dismissed where there is no private right of action available for an alleged statutory violation." Millenium Lab's, Inc. v. Universal Oral Fluid Lab's, LLC, No. 8:11-CV-1757-MSS-TBM, 2012 WL 12905083, at *3 (M.D. Fla. Apr. 25, 2012); see Schilling v. Rogers, 363 U.S. 666, 677 (1960) ("Additionally, the Declaratory Judgments Act is not an independent source of federal jurisdiction . . . the availability of such relief presupposes the existence of a judicially remediable right."). Chapter 324 of the Florida Statutes does not contain a private right of action. However, as a threshold matter, without determining the proper interpretation of Chapter 324, the Court cannot decide whether Sanchez's other claims are cognizable. The procedural posture of this case necessitates that the Court consider the statutory arguments as raised in Count IV. Thus, the Court uses Count IV as a vehicle to address those statutory arguments, leaving for another day whether a formal declaratory judgment is appropriate.[7]

---

[7] Defendants raise several other threshold issues regarding Count IV. First, State Farm briefly re-raises its one-way intervention rule argument.

## C. Chapter 324 of the Florida Statutes

Count IV requires the Court to interpret Florida Statutes Chapter 324, Florida's Financial Responsibility Law. If Hiday & Ricke's debt collection practices violate Chapter 324, Sanchez might have a cause of action. If they do not violate Chapter 324, Sanchez's case is legally meritless.

Chapter 324's stated purpose is:

> [T]o recognize the existing privilege to own or operate a motor vehicle on the public streets and highways of this state when such vehicles are used with due consideration for others and their property, and <u>to promote safety and provide financial security requirements for such owners or operators whose responsibility it is to recompense others</u> for injury to person or property caused by the operation of a motor vehicle.

Fla. Stat. § 324.011 (emphasis added). The law requires individuals to show "proof of ability to respond in damages for liability" in the amount of $10,000

---

(Doc. 85 at 2); <u>see also</u> (Doc. 86 at 13) (stating that Hiday & Ricke adopts State Farm's arguments). State Farm initially raised this argument in its Motion for Clarification (Doc. 63 at 3–4), which the Court denied (Doc. 65). The Court stands by its prior decision. Given the unique procedural posture of this case and the necessity of ruling on the interpretation of the statute to decide the remaining counts, the Court finds it appropriate to consider Count IV at this stage. <u>See</u> <u>Kehoe v. Fid. Fed. Bank & Tr.</u>, 421 F.3d 1209, 1211 n.1 (11th Cir. 2005) (noting that it is "within the court's discretion to consider the merits of the claims before their amenability to class certification").

Defendants also argue that a declaratory judgment is inappropriate because Sanchez seeks a declaration regarding past conduct, the issue is moot because the DMV changed its policy regarding the forwarding of judgments, and not all of the interested parties (namely, the DMV) are in the case. <u>See</u> (Doc. 85 at 4–7). These issues do not affect the Court's subject matter jurisdiction and will be addressed as necessary in its discussion of Count IV.

for any bodily injury, $20,000 per accident, and $10,000 for property damage. § 324.021(7). While individuals usually meet the above requirements by maintaining an insurance policy with the above-described limits, the statute specifies other ways of proving financial responsibility.[8] § 324.031.

Chapter 324 also provides several provisions for suspending drivers licenses. One such section requires that the DMV suspend an individual's license after an accident; however, the section explicitly exempts individuals who carried the minimum required insurance. § 324.051(2)(b). The suspension provision at issue in this case operates in situations where a judgment debtor defaults after an accident.

Section 324.111 states:

> Whenever any person fails within 30 days to satisfy any judgment, <u>upon the written request of the judgment creditor or his or her attorney</u> it shall be the duty of the clerk of the court, or of the judge of a court which has no clerk, in which any such judgment is rendered within this state, <u>to forward to the department</u> immediately after the expiration of said 30 days, a certified copy of such judgment.

---

[8] The options for proving financial responsibility, as prescribed in § 324.031(1), include:

(1) Furnishing satisfactory evidence of holding a motor vehicle liability policy as defined in ss. 324.021(8) and 324.151;

(2) Furnishing a certificate of self-insurance showing a deposit of cash in accordance with s. 324.161; or

(3) Furnishing a certificate of self-insurance issued by the department in accordance with s. 324.171.

(emphasis added). Section 324.121(1) then provides:

> The department, <u>upon the receipt of a certified copy of a judgment</u>, as provided in s. 324.111, <u>shall</u> forthwith <u>suspend</u> the license and registration and any nonresident's operating privilege of any person against whom such judgment was rendered, except as hereinafter otherwise provided in this section, and in s. 324.141.[9]

(emphasis added). Section 324.131 then provides the period of suspension:

> Such license, registration and nonresident's operating privilege shall remain so suspended and shall not be renewed, nor shall any such license or registration be thereafter issued in the name of such person, including any such person not previously licensed, **<u>unless and until</u>** every such judgment is stayed, satisfied in full <u>or to the extent of the limits stated in s. 324.021(7)</u> [the minimum insurance requirements] **<u>and</u>** <u>until</u> the said person gives proof of financial responsibility as provided in s. 324.031, such proof to be maintained for 3 years.

§ 324.131 (emphasis added).

The crux of the argument concerns this last section. Sanchez's judgment resulting from the accident was satisfied up to the limits in § 324.021(7) because she had the minimum insurance required at the time of the accident and Progressive paid the full $10,000 amount of that policy.[10] (Docs. 72-22 at 2; 72-5 at 6). Sanchez argues that the "unless" in § 324.131 means that her

---

[9] Section 324.141 regards installment payments and is not applicable here. Further, § 324.121(2) provides two exceptions to the general rule regarding suspension of drivers licenses, neither of which are applicable here.

[10] Hiday & Ricke cursorily argues that Sanchez's judgment was not satisfied up to the limits in § 324.021(7) because the judgment came after Progressive made the $10,000 payment. (Doc. 86 at 21). This argument ignores the reality that the judgment stemmed from the mediated settlement agreement which included the $10,000 insurance payment.

license should have never been suspended because her insurance already paid up to the statutory minimum. (Doc. 72 at 24). Sanchez argues that everything after the "unless" prerequisite does not apply to individuals like Sanchez (including giving proof of financial responsibility and maintaining that proof for three years). Id. Conversely, Hiday & Ricke argues that it just followed the statute. (Doc. 86 at 14–16). Hiday & Ricke sent the court judgment to the DMV[11] and the DMV, upon receipt of the judgment, was required to suspend the license; the DMV had no discretion. Id. Hiday & Ricke argues that even if "unless" is a prerequisite, the "and" and the second "until" in § 324.131 impose an additional requirement on Sanchez, and Sanchez cannot have her license back until she files proof of financial responsibility (which will have to be maintained for three years). Id. at 20–22. The Court is tasked with determining the proper interpretation of Chapter 324.

"As with the interpretation of any statute, the starting point of analysis is the actual language of the statute." Brown v. City of Vero Beach, 64 So. 3d 172, 174 (Fla. 4th DCA 2011) (citing Cont'l Cas. Co. v. Ryan Inc. E., 974 So. 2d 368, 374 (Fla. 2008)). "When a statute is clear and unambiguous, courts will not

---

[11] At the time Sanchez's license was suspended, the DMV told creditors to send the court judgments to the DMV instead of having the creditor request the court send the judgment. (Doc. 86-2 at 39:7–40:2). As a result of this lawsuit, the DMV has changed this policy and now requires that the court send the judgment as required by the statute. Id.

look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." <u>Id.</u> (quoting <u>Lee Cnty. Electric Coop., Inc. v. Jacobs</u>, 820 So. 2d 297, 303 (Fla. 2002)). "If the statute is clear and unambiguous, it is given its plain and obvious meaning . . . unless this would lead to an unreasonable result or a result clearly contrary to legislative intent." <u>Id.</u> (citing <u>Daniels v. Fla. Dep't of Health</u>, 898 So. 2d 61, 64 (Fla. 2005)).

First, if the Court held that drivers licenses can be suspended despite an individual having the required insurance, the word "unless" in § 324.131 would have no meaning. In that scenario, the "unless" in the statute would operate like the "until," making "unless" superfluous. The term "unless" is defined in Merriam-Webster Dictionary as "except on the condition that: under any other circumstance than," on Dictionary.com as "except under the circumstances that," and in Cambridge Dictionary as "except if."[12] Further, Oxford English Dictionary defines "unless and until" as "except if, except in the event that."[13] The plain language of § 324.131 and its use of "unless" leads to the conclusion

---

[12]    <u>Unless</u>,    Merriam-Webster.com    Dictionary    (online ed.), https://www.merriam-webster.com/dictionary/unless (last visited Mar. 15, 2023); <u>Unless</u>, Dictionary.com, https://www.dictionary.com/browse/unless (last visited Mar. 15, 2023); <u>Unless</u>, Cambridge Dictionary (online ed.), https://dictionary.cambridge.org/us/dictionary/english/unless (last visited Mar. 15, 2023).

[13]    <u>Unless and until</u>,    Oxford    English    Dictionary    (online ed.), https://www.oed.com/view/Entry/215075?redirectedFrom=unless+and+until#eid1212983170 (last visited Mar. 15, 2023).

that there is an exception in § 324.131. That exception would arguably apply to individuals like Sanchez who carried the requisite minimum insurance and have had judgments paid up to the limits specified in § 324.021(7). However, it is unclear how "unless," "until," and the second "and" operate. Either the final condition that individuals provide proof of insurance (that must be maintained for three years) does not apply to individuals like Sanchez, or it does. If it does, then Sanchez would still have her license suspended until she met that final condition (again, making the "unless" operate like an "until"). If it does not, Sanchez should have never had her license suspended in the first place. The statute could reasonably be subject to either reading; thus, the language of § 324.131 is ambiguous.

Second, the purpose of Chapter 324 is "to promote safety and provide financial security requirements for such owners or operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle." § 324.011. This purpose is met under the statute by having the required minimum amount of insurance. Id. It is unclear in § 324.131 whether the Legislature meant to authorize suspension of drivers licenses for those judgment debtors who carried the required minimum insurance (like Sanchez) or whether the license suspension is limited to those who did not meet the statute's financial responsibility requirements.

Further, if the Court were to hold that Sanchez's license was properly suspended, that would create tension in relation to the broader statutory scheme. Chapter 324's provisions are focused on individuals obtaining and maintaining the minimum required insurance and punishing those who fail to do so. See generally §§ 324.022 (Financial responsibility for property damage); 324.0221 (directing insurers to report to the DMV when insurance policies are cancelled); 324.023 (Financial responsibility for bodily injury or death); 324.151 (Motor vehicle liability policies; required provisions). No other license suspension provision in Chapter 324 appears to apply to individuals who carried the requisite insurance (or otherwise met the financial responsibility requirements). See generally §§ 324.0221(2)(a), 324.051(2)(b), 324.072(1), 324.081(3).

Finally, it is uncertain how the law as written plays out in real time. If the statute requires Sanchez's license be suspended, it means that immediately after Sanchez's license was suspended, she could get her license back after confirming that she had the required insurance at the time of the accident. In theory, this scenario could repeat every time Sanchez defaulted, a potentially unintended result. Section 324.131 is ambiguous.[14]

_____

[14] The Court is aware that there are other sections within Chapter 324 where a person properly insured at the time of the accident should not have their license suspended. See § 324.051(b). The Legislature did not provide such an explicit exception as it relates to defaulting on court judgments. See

## D. Extrinsic Evidence of Chapter 324

Because the Court finds that § 324.131 is ambiguous, the Court will consider the extrinsic evidence concerning Chapter 324, specifically the DMV's interpretation of Chapter 324. See Modder v. Am. Nat. Life Ins. Co. of Texas, 688 So. 2d 330, 333 (Fla. 1997) ("[E]xtrinsic aids and rules of statutory construction and interpretation are available to courts where statutes are ambiguously worded . . . ." (citing Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984))).

Under the current DMV policy, individuals whose licenses are suspended under §§ 324.121 and 324.131 receive a letter stating that if they had the required insurance on the date of the accident, they need only present proof of that insurance and their licenses will be reinstated. See (Docs. 72-17; 82-2 at 26:18–23, 41:20–42:1, 80:2–5). Patricia Porter, an Operations and Management Consultant Manager in the Bureau of Motorist Compliance in the Florida DMV submitted a declaration and testified on behalf of the DMV. (Docs. 72-1, 86-2). Kathy Jimenez-Morales, an attorney who acted as the DMV's legal counsel,

---

§ 324.121(2)(a)–(b). However, one of these exceptions, § 324.121(2)(b), supports the conclusion that Chapter 324's purpose is focused on individuals obtaining and maintaining the required minimum level of insurance. See § 324.121(2)(b) ("If the department determines that an insurer was obligated to pay the judgment but failed to do so through no fault of the judgment debtor, the judgment debtor's license and registration and any nonresident's operating privilege shall not be suspended."). In any event, the other statutory provisions further highlight the ambiguity evidenced by § 324.131.

19

assisted Porter in preparing the declaration and represented the DMV at Porter's deposition. (Docs. 75 at 14–16; 86-2 at 8:12–13). The DMV authorized Porter to make the statements in the declaration. (Docs. 72-1 ¶ 1; 86-2 at 13:16–22).

In her declaration, Porter states: "If the judgment debtor has insurance which satisfies the limits established by FLA. STAT. § 324.021(7), there should not be a request for a suspension under Chapter 324." (Doc. 72-1 ¶ 9).[15] However, in her deposition Porter clarifies this statement. Porter states that if the DMV receives a judgment, it has no discretion; it must suspend the license. (Doc. 86-2 at 42:18–21, 48:6–13). Porter testifies that the DMV does not check whether the judgment debtor had the minimum amount of insurance required by law. Id. at 42:22–25. Porter states that judgment creditors should not request suspension of licenses where the individual had the correct amount of insurance at the time of the accident. Id. at 36:4–19, 47:20–24, 48:19–21. She was unable to answer questions regarding whether the statute requires the creditor to

_____

[15] State Farm argues that the Court should disregard Porter's declaration because the declaration was not sworn under penalty of perjury, nor does it state whether the statements are based on personal knowledge. (Doc. 85 at 8–9). However, Porter testified in her deposition, after being duly sworn, that she was authorized by the DMV to make the statements in the declaration. (Doc. 86-2 at 5:9–10, 13:16–22). Further, State Farm implies that Porter's statements in the declaration are contradictory to her deposition. (Doc. 85 at 8–9). The Court does not find that to be true.

Case 3:21-cv-00372-TJC-LLL   Document 92   Filed 03/21/23   Page 21 of 35 PageID 1731

check for the required insurance at the time of the accident before seeking license suspension. Id. at 34:20–35:16.

While Porter acknowledges that the DMV must suspend a license when a judgment is sent to it, she also testifies that if the debtor had the required insurance at the time of the accident, the suspension is immediately cleared. Id. at 28:1–20. Porter differentiates this from those who have to go through the license reinstatement process. Id. This approach is reflected in the DMV's letter that is sent to those whose licenses are suspended in which the DMV distinguishes between those who had the required insurance at the time of the accident and those who did not. See (Doc. 72-17 at 2). The letter begins: "This judgment is a result of the traffic crash on October 30, 2015. If you had bodily injury and property damage liability coverage on October 30, 2015, please obtain a letter on letterhead from your insurance company documenting all policy information including . . . a statement declaring the policy was in effect on the crash date." Id. The letter continues in bold text: "If you DID NOT have the required insurance as mentioned above, refer to the following instructions on how to clear your suspension." Id. The instructions direct the individual to get a satisfaction of judgment or a judgment consent form, to obtain and maintain insurance for three years, and to pay a reinstatement fee. Id. As laid out in Porter's deposition and the DMV's letter: the proof of financial responsibility and three-year requirement found in § 324.131 do not apply to

21

those who had the required insurance at the time of the accident. (Doc. 86-2 at 17:17–18:1).[16]

In sum, Porter states that the DMV has no discretion when it comes to suspensions under § 324.121; however, the DMV also does not read the statute to authorize license suspension when the individual had the required insurance at the time of the accident. This is supported by the letter the DMV sends to individuals whose licenses are suspended and its procedure to immediately clear suspensions for those with the requisite minimum amount of insurance instead of requiring these individuals to go through the full reinstatement and future proof requirements. Thus, the DMV interprets the "unless" in § 324.131 as an exception or a prerequisite. However, nothing in the statute requires creditors or the DMV to check whether the individual had the required insurance and Porter identifies no procedures to prevent incorrect suspensions.[17]

---

[16] In her deposition, Porter said the DMV would update its website to correct some inaccurate information regarding licenses suspensions. (Doc. 86-2 at 40:8–41:9).

[17] The DMV sent Sanchez the letter and immediately suspended her license. (Doc. 86-2 at 83:3–84:2). The DMV now has a policy that a person is given five days before his or her license is suspended to provide proof of insurance at the time of the accident. Id. at 81:17–19, 83:3–16. If the goal of the DMV is not to suspend licenses for drivers with the requisite insurance, five days seems exceedingly short. However, this issue is beyond the Court's review.

Because the Court found Chapter 324 ambiguous, the DMV's interpretation should be afforded deference. See Mayo Clinic Jacksonville v. Dep't of Pro. Regul., Bd. of Med., 625 So. 2d 918, 919 (Fla. 1st DCA 1993) ("Generally, the interpretation of a statute by the agency charged with its enforcement is entitled to great deference and should not be overturned unless clearly erroneous or in conflict with the legislative intent of the statute." (citing PW Ventures, Inc. v. Nichols, 533 So. 2d 281 (Fla. 1988))). Porter's declaration, testimony, and the letter from the DMV to Sanchez are all evidence of the DMV's interpretation of §§ 324.121 and 324.131 and should be afforded deference. See id.; (Docs. 72-1, 72-17, 86-2).

### E. Florida Attorney General Opinion and Case Law

On December 3, 1958, Florida's Attorney General issued an opinion on the exact issue presented in this case. When the Attorney General was asked the following question:

> When a person furnishes satisfactory evidence of being properly insured at the time he was involved in a motor vehicle accident can his driving and registration privileges be suspended thereafter under §324.121, F.S., if a judgment is rendered against him as a result of the accident in an amount in excess of the $10/20/5 limits of liability required by §324.021(7), F. S.?

(Doc. 34-1 at 2), he gave the following answer:

> Section 324.121, F.S., provides that the insurance commissioner shall, upon receipt of a certified copy of a "judgment," suspend the license and registration of the person against whom the judgment was rendered. ("Judgment" is defined in §324.021(10), F.S.,)

Section 324.131, F.S., provides that the license and registration shall remain suspended until the "judgment is stayed, satisfied in full or to the extent of the limits stated in §324.021(7). . . ." If a person is properly insured, his insurance will satisfy the judgment to the extent of the limits provided in §324.021(7), F.S. <u>Accordingly, your 1st question is answered in the negative.</u>

<u>Id.</u> (emphasis added).

"Opinions of the Attorney General are considered persuasive, but do not constitute binding authority on the courts of Florida." <u>Willens v. Garcia</u>, 53 So. 3d 1113, 1117 n.4 (Fla. 3d DCA 2011) (citing <u>Palm Beach Cnty. v. Hudspeth</u>, 540 So. 2d 147, 152 (Fla. 4th DCA 1989)). While the Attorney General opinion is almost sixty-five years old, many cases discussing Chapter 324 and the Uniform Financial Responsibility Law are of a similar age. <u>See, e.g.</u>, <u>Harrison v. Larson</u>, 133 So. 2d 446 (Fla. 1st DCA 1961); <u>Howard v. Am. Serv. Mut. Ins. Co.</u>, 151 So. 2d 682 (Fla. 3d DCA 1963); <u>Lynch-Davidson Motors v. Griffin</u>, 182 So. 2d 7 (Fla. 1966); <u>Bankers & Shippers Ins. Co. of N.Y. v. Phoenix Assur. Co. of N.Y.</u>, 210 So. 2d 715 (Fla. 1968). Because the Attorney General's opinion is directly on point, the Court finds the opinion very persuasive.

One case in Florida appears to agree with the DMV's and the Attorney General's interpretation of Chapter 324: <u>Williams v. Ferrentino</u>, 199 So. 2d 504 (Fla. 2d DCA 1967). In <u>Williams</u>, the Second DCA considered whether the Circuit Court's decision that judgment debtors were entitled to an administrative hearing to present evidence regarding their insurance was

24

correct. Id. at 514. In Williams, the Ferrentinos' drivers licenses were suspended after nonpayment of a judgment. Id. at 507. There was a dispute regarding whether the Ferrentinos had valid insurance at the time of the accident. Id. The Ferrentinos filed a petition to hold the suspension in abeyance until it was determined whether the Ferrentinos had insurance on the day of the accident. Id. at 507–08. The Second DCA held that a hearing was required. Id. at 521. While the Second DCA did not discuss the language of the statute, it presupposed that only uninsured motorists' licenses should be suspended for nonpayment of a judgment. The Williams court stated:

> This opens the door to presentation before the Commissioner of any facts or circumstances that might affect the issuance of the suspension order. Such matters, as related to the case sub judice, would include the contention that the Ferrentinos were legally covered by insurance. If they were so covered, and the insurance company was legally obligated to pay the judgment, then the Ferrentinos should not have to suffer their driving privileges to be taken away. If they were not so covered, then they were in fact uninsured motorists and should suffer the penalties of F.S. Section 324.121, F.S.A.

Id. at 513 (emphasis added). While the Second DCA did not directly consider the issue before the Court, the opinion provides an insight into how Florida courts might interpret §§ 324.121 and 324.131.

### F. Case Law from Other Jurisdictions

Florida's Financial Responsibility Law originated from the Uniform Financial Responsibility Law; therefore, other states have considered similar or

identical language to that found in §§ 324.121 and 324.131. One Texas case addressed the exact issue before the Court: whether an individual's license is properly suspended under the judgment debtor suspension provisions if the individual had the required minimum insurance at the time of the accident. The Civil Court of Appeals in Texas found that the Department of Public Safety could suspend the individual's license under the court judgment suspension provisions, despite the individual having the required insurance at the time of the accident. Dep't of Pub. Safety v. Lozano, 323 S.W.2d 316, 318–19 (Tex. Civ. App. 1959). The Lozano court cited other cases with similar holdings, notably, however, these cases have been overruled or the factual scenarios are likely now covered by an explicit exception in the statute. Id. at 319–20; see also § 324.121(2)(b). While this Texas case weighs against Sanchez, it is not as persuasive as the Attorney General Opinion, or the Williams case's interpretation of the Florida statute.

To recap: the plain language of § 324.131 is ambiguous. Based on the better reading of §§ 324.121 and 324.131, the DMV's reading of the statute, the persuasive authority of the Florida Attorney General Opinion, and the Williams case, because Sanchez carried the minimum insurance required by law, her license should not have been suspended based on the judgment entered in the personal injury action. While it is arguable whether under the current statutory scheme a judgment creditor is required to ascertain whether a judgment debtor

26

has the requisite minimum insurance before seeking to suspend the debtor's license, that is certainly the proper course. In any event, here, it is undisputed that Hiday & Ricke knew that Sanchez had the required insurance when it sought suspension of Sanchez's license. Indeed, Progressive paid Sanchez's $10,000 policy limit directly to Hiday & Ricke as part of the mediated settlement. (Doc. 72-5 at 6). Thus, Hiday & Ricke's actions were in contravention of the statute. With this framework in place, the Court turns to the motions to dismiss the substantive counts.

### III. MOTIONS TO DISMISS

#### A. RICO (Counts I & II)

Sanchez brings claims under both 18 U.S.C. § 1962(c) and (d). [18] To survive a motion to dismiss a RICO claim, plaintiffs must plausibly allege that the defendants "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff. If a plaintiff fails to adequately plead any one of these elements, she

---

[18] Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Similarly, 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

has failed to state a claim upon which relief may be granted . . . ." <u>Cisneros v. Petland, Inc.</u>, 972 F.3d 1204, 1211 (11th Cir. 2020) (internal citations omitted). Sanchez alleges Defendants engaged in the predicate acts of extortion and mail fraud. (Doc. 64 ¶¶ 69–70, 75, 89, 97–99, 103, 107–08, 113, 121).

There are several potential issues with Sanchez's RICO allegations, but the Court elaborates on only one: whether Sanchez has alleged the existence of an enterprise. "A RICO enterprise is 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" <u>Cisneros</u>, 972 F.3d at 1211 (quoting 18 U.S.C. § 1961(4)). Additionally, "a plaintiff must establish a distinction between the defendant 'person' and the 'enterprise' itself. The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities." <u>Ray v. Spirit Airlines, Inc.</u>, 836 F.3d 1340, 1355 (11th Cir. 2016) (citing <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161–62 (2001)). "In an association-in-fact enterprise, a defendant corporation cannot be distinct for RICO purposes from its own officers, <u>agents</u>, and employees when those individuals are operating in their official capacities for the corporation." <u>Id.</u> (emphasis added).

Sanchez alleges that "Hiday & Ricke and its attorneys, State Farm and other auto insurers are associated in fact for the express purpose of collecting judgment debts from Florida drivers through the improper suspension of

28

judgment debtors' driver's licenses." (Doc. 34 ¶ 87). However, Sanchez also alleges that Hiday & Ricke collects "judgment debts <u>on behalf of</u> State Farm" and that "State Farm <u>hired</u> Hiday & Ricke and its attorneys" to pursue the subrogation action. <u>Id.</u> ¶¶ 11, 35 (emphasis added). As alleged, Hiday & Ricke, Hiday, Ricke, and Reiss were acting as agents of State Farm, and Sanchez does not allege that they were acting outside the scope of their employment as such agents. Therefore, State Farm and its agents Hiday & Ricke, Hiday, Ricke, and Reiss cannot constitute an enterprise in and of themselves. <u>See</u> <u>Ray</u>, 836 F.3d at 1357 ("[P]laintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents . . . acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents . . . . [T]here is no distinction between the corporate person and the alleged enterprise."); <u>Marlett v. Marlett</u>, No. 3:11-CV-959-J-37MCR, 2012 WL 13136736, at *12 (M.D. Fla. Feb. 7, 2012) ("Clearly, the attorney was acting as Plaintiff's ex-wife's agent during the state court proceedings and as such, the two are not sufficiently separate and distinct so as to form an enterprise."), <u>report and recommendation adopted</u>, No. 3:11-CV-959-J-37MCR, 2012 WL 13136902 (M.D. Fla. Feb. 29, 2012).

Sanchez argues that the Court should look to <u>Cedric Kushner</u>, where the Supreme Court held that an enterprise can exist when an individual defendant engages in a pattern of racketeering activity through a corporation, even if the

defendant is the sole shareholder of the corporation. 533 U.S. at 163–65. But as the Eleventh Circuit noted in <u>Ray</u>, the Supreme Court in <u>Cedric Kushner</u> was considering a situation where the individual was acting through a corporation, it was not considering the "'quite different' issue . . . where the defendant 'person' [under RICO] is a corporation and is alleged to have engaged in an enterprise with its officers, employees, and <u>agents</u>." <u>Ray</u>, 836 F.3d at 1356 (quoting <u>Cedric Kushner</u>, 533 U.S. at 164) (emphasis added). This case is not like <u>Cedric Kushner</u> where an individual person uses a corporation as a vehicle to conduct RICO-forbidden activities. Here, State Farm is alleged to have worked with its agents, Hiday & Ricke, and several Hiday & Ricke attorneys. As a corporate defendant, State Farm can only act through its agents and employees; thus, State Farm is not sufficiently distinct from its agents for RICO purposes. <u>See</u> <u>Ray</u>, 836 F.3d at 1357; <u>Marlett</u>, 2012 WL 13136736, at *12.

Sanchez alleges that "other auto insurers" were a part of the enterprise but offers no factual allegations to support this claim. <u>See</u> (Doc. 34 ¶¶ 11, 14, 84–85, 87, 89–90, 93, 95). Because Sanchez has failed to plead the existence of an enterprise, it is unnecessary for the Court to analyze the remaining elements of Sanchez's RICO claims.

Sanchez's RICO claims do not survive Federal Rule of Civil Procedure 12(b)(6) as pled. The Court is skeptical that Sanchez will be able to allege a

30

viable RICO claim; however, Sanchez will be given one final opportunity to plead her RICO claims if she so chooses.

## B. Abuse of Process (Count III)

Under Florida law, "[a]buse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed." Bothmann v. Harrington, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984). "A cause of action for abuse of process contains three elements: (1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage." S & I Invs. v. Payless Flea Mkt., Inc., 36 So. 3d 909, 917 (Fla. 4th DCA 2010). "In an abuse of process action, process may mean an action that is initiated independently such as the commencement of a suit, or one initiated collaterally, such as an attachment." Peckins v. Kaye, 443 So. 2d 1025, 1026 (Fla. 2d DCA 1983) (citation omitted). Importantly, abuse of process can only apply to scenarios where process has issued. S & I Invs., 36 So. 3d at 917 (quoting McMurray v. U-Haul Co., 425 So. 2d 1208, 1209 (Fla. 4th DCA 1983)). "There is no abuse of process . . . when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior

31

purpose. In other words, the usual case of abuse of process involves some form of extortion." <u>Bothmann</u>, 458 So. 2d at 1169.

Defendants argue that the statutory mechanism used to suspend drivers licenses does not constitute process for purposes of an abuse of process claim. (Docs. 38 at 21–23; 39 at 18). Defendants further contend that abuse of process claims involve only court processes, <u>id.</u> (citing <u>Blue Dolphin, Inc. v. United States</u>, 666 F. Supp. 1538, 1541 (S.D. Fla. 1987)), and that the procedure laid out by §§ 324.121 and 324.131 primarily operates through the DMV, an executive agency. (Docs. 38 at 21–23; 39 at 18–19). Sanchez urges the Court to adopt a broader definition of process. <u>See</u> (Docs. 40 at 17–18; 41 at 19–20). In support, Sanchez notes <u>Pronman v. Styles</u>, which cites several cases from other states holding that the term "process" is defined broadly, generally including many procedures incident to the litigation process. No. 12-80674-CIV, 2014 WL 2586340, at *3 (S.D. Fla. June 10, 2014) (collecting cases).

The procedure laid out in Chapter 324 for suspending judgment debtors' licenses is neither wholly judicial nor wholly executive.[19] While the DMV

---

[19] As a reminder, § 324.111 states:

Whenever any person fails within 30 days to satisfy any judgment, upon the written request of the judgment creditor or his or her attorney it <u>shall be the duty of the clerk of the court, or of the judge of a court which has no clerk, in which any such judgment is rendered within this state, to forward to the [DMV] immediately</u> after the expiration of said 30 days, a certified copy of such

executes the final suspension, the DMV has no discretion; once it receives the judgment it must suspend the license. That cannot occur without a court judgment or without the court sending a certified copy of the judgment to the DMV, which could be seen as the equivalent of the issuance of process. Hiday & Ricke arguably invoked that process by seeking the license suspension.[20] Defendants have allegedly been threatening to suspend individuals' drivers licenses, whether those individuals had the minimum amount of insurance and were eligible to have their licenses suspended or not. (Doc. 34 ¶ 132). Sanchez alleges that Defendants knew Sanchez had the required insurance at the time of the accident giving rise to the judgment and allegedly requested suspension "for the exclusive purpose of abusing and harassing Plaintiff and the Class in order to put pressure on Plaintiff and the Class to pay money towards their judgment debt for Defendants' own pecuniary gain." Id. ¶¶ 132–33. Sanchez also alleges that the suspension of her license caused her "out-of-pocket costs associated with the loss of her driver's license, including but not limited to the

---

judgment.

(emphasis added). Upon receipt of that judgment, the DMV "shall forthwith suspend the license and registration . . . of any person against whom such judgment was rendered, except as hereinafter otherwise provided in this section, and in s. 324.141." § 324.121(a).

[20] Sanchez alleges that Defendants sent the notice of default and a request for suspension directly to the DMV. (Doc. 34 ¶ 54). However, the DMV has since clarified that the suspension request must come directly from the court. See supra, note 11.

cost to reinstate her license[,] . . . costs of transportation[,] . . . [and] [t]he loss of her job as a result of not being able to drive . . . ." Id. ¶ 136. While the use of an abuse of process theory in this context is novel, the Court is not prepared to dismiss Count III on the pleadings.[21]

Accordingly, it is hereby

**ORDERED:**

1. The Court has decided the issues raised by Plaintiff's Motion for Summary Judgment (Doc. 72) as stated herein. The Court's decision on whether to issue a declaratory judgment is **DEFERRED**.

2. Defendants' Motions to Dismiss (Docs. 38, 39) are **GRANTED in part** and **DENIED in part**. The Motions are **DENIED** as to Count III. Counts I and II are **DISMISSED without prejudice**. Plaintiff may file a Second Amended Complaint no later than **April 21, 2023**. If Plaintiff files a Second Amended Complaint, Defendants shall answer the Second Amended Complaint or move

---

[21] In Antoine v. State Farm Mut. Auto. Ins. Co., 662 F. Supp. 2d 1318, 1325 (M.D. Fla. 2009), Judge Melton also considered a motion to dismiss an abuse of process claim in a case involving Hiday & Ricke, State Farm, and an allegedly improper drivers license suspension. Judge Melton dismissed the plaintiff's abuse of process claim without prejudice. Id. Antoine is distinguishable because the plaintiff only vaguely alleged the legal process being abused. Id. Notably, Judge Melton permitted the plaintiff to amend the abuse of process claim and instructed the plaintiff to identify "any civil or criminal legal process that was involved in the suspension." Id. Further, it is not clear that the allegedly improper suspension was under § 324.121. Soon after Judge Melton issued his order, the parties voluntarily dismissed the case.

34

to dismiss only Counts I and II (the RICO counts) no later than **May 19, 2023**. If Defendants move to dismiss the Second Amended Complaint, Plaintiff shall respond no later than **June 16, 2023**. If Plaintiff does not file a Second Amended Complaint, Defendants shall answer the Amended Complaint (Doc. 34) no later than **May 19, 2023.**

3. No later than **April 21, 2023**, the parties shall jointly file an Amended Case Management Report.

**DONE AND ORDERED** in Jacksonville, Florida the 21st day of March, 2023.

*Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

ckm
Copies:

Counsel of record

35