## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CARMEN DANIELLE MORA SANCHEZ, on behalf of herself and all others similarly situated,

         Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, HIDAY & RICKE, P.A., JEFF RICKE, an individual, ROBERT HIDAY, an individual,

         Defendants.

Case No.: 3:21cv-00372-TJC-LLL

CLASS ACTION

## PLAINTIFF'S UNOPPOSED TIME-SENSITIVE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF NOTICE PLAN AND MEMORANDUM OF LAW IN SUPPORT

# **<u>TABLE OF CONTENTS</u>**

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES .................................................................. iii

I.  TIME-SENSITIVE NATURE ......................................................... 1

II.  CONCISE STATEMENT OF THE RELIEF REQUESTED ...................... 2

III.  PROCEDURAL POSTURE ............................................................. 2

IV.  THE SETTLEMENT ....................................................................... 3

    A.  Proposed Settlement Class .................................................. 3

    B.  Settlement Relief ................................................................. 4

        1.  Non-Monetary Contractual Relief .............................. 4

        2.  Monetary Relief ........................................................ 5

V.  PRELIMINARY APPROVAL IS WARRANTED AND NOTICE SHOULD BE ISSUED .................................................................. 7

    A.  The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23 ..................................................... 8

        1.  Rule 23(a)(1)–Numerosity ........................................ 11

        2.  Rule 23(a)(2) – Commonality ................................... 11

        3.  Rule 23(a)(3) –Typicality ......................................... 12

        4.  Rule 23(a)(4)–Adequacy of Representation ............... 13

    B.  Rule 23(b)(3)–Class Action is Superior to Other Available Methods to Resolve This Controversy ............................... 14

    C.  The Proposed Settlement Is Fair, Adequate and Reasonable Under Rule 23(e)(3) ......................................................... 15

1.    The Class Representatives and Class Counsel Have Adequately Represented the Class ............................................ 16

2.    The Proposed Settlement Was Negotiated at Arm's Length ..... 16

3.    The Relief Provided to the Class Is Adequate ........................... 17

   a.    The costs, risks, and delay of trial and appeal ................ 19

   b.    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims ................................ 19

   c.    The terms of any proposed award of attorney's fees, including timing of payment ........................................ 20

   d.    Any agreement required to be identified under Rule 23(e)(3) .......................................................................... 23

4.    The proposal treats class members equitably relative to one another ................................................................................... 23

VI.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS ............................. 24

VII.   CONCLUSION ........................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                         **<u>Pg(s)</u>**

*Accord Mees v. Skreened, Ltd.*,
   No. 14-cv-142, 2016 WL 67521 (S.D. Ohio Jan. 6, 2016) ...........................16

*Adams v. S. Farm Bureau Life Ins. Co.*,
   417 F. Supp. 2d 1373, 1380 (M.D. Ga. 2006)
   *aff'd*, 493 F.3d 1276 (11th Cir. 2007)...........................................................24

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .....................................................................................8

*Archbold v. Wells Fargo Bank, N.A.*,
   No. 13-cv-24599, 2015 WL 4276295 (S.D. W. Va. July 14, 2015)................16

*Armstead v. Pingree*,
   629 F. Supp. 273 (M.D. Fla. 1986)...............................................................11

*Busby v. JRHBW Realty*,
   513 F.3d 1314 (11th Cir. 2008)............................................................. 13, 14

*Camden I Condominium Assn. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) .....................................................................20

*City of St. Petersburg v. Total Containment, Inc.*,
   265 F.R.D. 630 (S.D. Fla. 2010) .................................................................13

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .....................................................................17

*Cox v. American Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986).....................................................................11

*Dickens v. GC Servs. Ltd. P'ship*,
   706 Fed. Appx. 529 (11th Cir. 2017) ...........................................................14

*Eisen v. Carlisle & Jaqueline*,
   417 U.S. 156 (1974) .....................................................................................24

*Faught v. Am. Home Shield Corp.*,
    No. 07-cv-1928, 2010 WL 10959223 (N.D. Ala. Apr. 27, 2010)
    *aff'd*, 688 F.3d 1233 (11th Cir. 2011) ....................................................... 17, 21

*Fuller v. Becker & Poliakoff, P.A.*,
    197 F.R.D. 697 (M.D. Fla. 2000) ................................................................. 11

*Hemphill v. San Diego Ass'n of Realtors, Inc.*, 2
    25 F.R.D. 616 (S.D. Cal. 2004) .................................................................... 16

*In re Bluetooth Headset*,
    654 F.3d 935 (9th Cir. 2011) ....................................................................... 23

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ....................................................... 20

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ....................................................................... 17

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
    55 F.3d 768 (3d Cir. 1995) .......................................................................... 23

*In re Home Depot Inc.*,
    931 F.3d 1065 (11th Cir. 2019) ................................................................... 22

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................... 16

*In re Terazosin Hydrochloride*,
    220 F.R.D. 672 (S.D. Fla. 2004) .................................................................. 12

*Johnson v. NPAS Sols., LLC*,
    975 F.3d 1244 (11th Cir. 2020) ..................................................................... 7

*Junior v. Infinity Ins. Co.*,
    No. 6:18-cv-1598-WWB-EJK (M.D. Fla. 2023) ........................................... 7

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ................................................................... 24

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ................................................................. 11, 12

*Kelly v. Sabretech Inc.*,
    195 F.R.D. 48 (S.D. Fla. 1999) ....................................................................14

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004)...................................................................15

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984)............................................................ 11, 12

*Lee v. Ocwen Loan Serv., LLC,* ..............................................................................
    No. 14-cv-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ...................16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................8

*Mills v. Foremost Ins. Co.*, 5
    11 F.3d 1300 (11th Cir. 2008) .......................................................................8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .....................................................................................25

*Pearson v. Ecological Sci. Corp.*,
    522 F.2d 171 (5th Cir. 1975) ........................................................................25

*Pottingar v. Miami*,
    720 F. Supp. 955 (S.D. Fla. 1989) ...............................................................11

*Prado–Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000)..................................................................8, 9

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................17

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014) ..................................................................16

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010)..............................................................14, 15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................21

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ........................................................................9

*Venerus v. Avis Budget Car Rental, LLC,*
    674 F. Supp. 3d 1107 (M.D. Fla. 2023) .........................................7

*Waters v. Int'l Precious Metals Corp.,*
    190 F.3d 1291 (11th Cir. 1999)......................................................21

**Statutes:**

Fed. R. Civ. P. 23 ...............................................................................*passim*

Fla. Stat. § 324.021(7) .............................................................................4

Fla. Stat. § 627.7415 ................................................................................4

Fla. Stat. § 627.742 ..................................................................................4

M.D. Fla. L.R. 3.01(e)..............................................................................1

**Misc.:**

Florida Financial Responsibility Law (Chapter 324)..............................18

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 ..........................17

Plaintiff, Carmen Danielle Mora Sanchez, on behalf of herself and all others similarly situated ("Plaintiff Sanchez"), by and through undersigned counsel, moves for preliminary approval of a class action settlement and approval of the proposed notice plan pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.[1] This Motion is filed on a time-sensitive basis pursuant to M.D. Fla. L.R. 3.01(e). The reasons for the Motion are set forth below.

## I.    TIME-SENSITIVE NATURE

As discussed below, this case concerns the suspension of driving privileges. During the course of this lawsuit, a number of Settlement Class Members had their driving privileges reinstated by the State of Florida. It is Plaintiff's counsel's belief there are Settlement Class Members who are unaware they can legally drive again. [Dkt. 186]. The inability to drive causes extreme hardship on Settlement Class Members who should be alerted of that change in driving status and this Proposed Settlement. The class settlement notice to the Settlement Class provides an opportunity to expeditiously notify Settlement Class Members of driver's license reinstatements to the extent they are unaware. Accordingly, Plaintiff respectfully requests that the Court issue an Order Granting Preliminary Approval (the "Approval Order" before April 14, 2025 (or as soon as possible thereafter). A proposed order, which has been agreed to by all Parties, is attached as **Exhibit 1**.

---

[1] Capitalized words and phrases in this Memorandum are intended to coincide with the defined terms set forth in Section I of the proposed Settlement Agreement.

## II.    CONCISE STATEMENT OF THE RELIEF REQUESTED

Plaintiff files this Motion requesting that the Court preliminarily approve the proposed Settlement Agreement and find the Proposed Settlement to be fair, adequate and reasonable such that notice should be issued to the Settlement Class pursuant to Rule 23(e). The proposed Approval Order approves the form of notice to be given to the Settlement Class, establishes a process for the submission of any objections or requests for exclusion, and provides for a Final Approval Hearing to be held by the Court.

## III.    PROCEDURAL POSTURE

This case, the "*Sanchez* Action", is one of two putative class actions asserting claims against Defendants, Hiday & Ricke, P.A. ("H&R"), Jeff Ricke, and Robert Hiday (collectively the "H&R Defendants"), and State Farm Mutual Automobile Insurance Company ("State Farm") (collectively, "Defendants"). Both cases challenge Defendants' alleged practice of requesting that the Florida Department of Highway Safety and Motor Vehicles ("DMV") suspend the driver's licenses of certain judgment debtors. The second putative class action involving this alleged practice is *Waters v. State Farm Mut. Auto. Ins. Co.*, No. 2:24-cv-293 (M.D. Fla.) (the "*Waters* Action").

Plaintiff Sanchez had previously moved for leave to amend to add Brandon Waters as a named plaintiff in the *Sanchez* Action. [Dkt. 126]. The Court ultimately denied that motion. [Dkt. 170]. On April 2, 2024, Brandon Waters and Kashana Sangfield thereafter filed the separate *Waters* Action, which asserts additional claims that have not been asserted in the *Sanchez* Action [*Waters* Action Dkt. 1].

In the *Sanchez* Action, the Court ordered the Parties to mediate. [Dkt. 170]. Thereafter, the Parties attended two extensive in-person mediation sessions with Michael Hanzman on June 3, and September 30, 2024. A final mediation session was held on November 1, 2024, with only Plaintiffs and State Farm. In the months that followed, the Parties reached an agreement to settle both cases. As part of the Proposed Settlement, the Parties have agreed to the filing of an amended complaint that will add Waters and Sangfield as additional class representative plaintiffs and will add the claims pending in the *Waters* Action. A redline version of Plaintiff's proposed Third Amended Complaint is included as **Exhibit 2**. A clean version of the proposed Third Amended Complaint is included as **Exhibit 3**. As set forth in the Settlement Agreement, this agreement to permit the Third Amended Complaint is for settlement purposes only.

## IV.  THE SETTLEMENT

Following three mediation sessions, the Parties executed a Settlement Agreement on March 21, 2025. A copy of the Settlement Agreement is included as **Exhibit 4**.

### A.  Proposed Settlement Class

The Settlement Class shall be comprised of 441 persons identified through the H&R Defendants' search of their records. Ex. 4, Settlement Agreement, ¶¶ 10–12.[2] All 441 Settlement Class Members meet the following criteria:

---

[2]    As the Proposed Settlement is only at the approval stage, the identities of the putative Settlement Class Members are not being filed in the public record.

(a) The person was a judgment debtor of State Farm between April 7, 2017 and June 11, 2024 pursuant to a judgment obtained by State Farm against that person (the "State Farm judgment");

(b) The State Farm judgment against that person arose from an automobile accident with a State Farm insured;

(c) At the time of the accident giving rise to the State Farm judgment, the person maintained at least the minimum required insurance pursuant to Fla. Stat. § 324.021(7) (2017 to date). That minimum insurance is:  (a) In the amount of $10,000 because of bodily injury to, or death of, one person in any one crash; (b) Subject to such limits for one person, in the amount of $20,000 because of bodily injury to, or death of, two or more persons in any one crash; (c) In the amount of $10,000 because of injury to, or destruction of, property of others in any one crash; and (d) With respect to commercial motor vehicles and nonpublic sector buses, in the amounts specified in §§ 627.7415 and 627.742, respectively. *See* Fla. Stat. § 324.021(7);

(d) The person (or their automobile insurer) tendered payment to State Farm;

(e) The person's driver's license was suspended between April 7, 2017 and June 11, 2024 pursuant to a request by Hiday & Ricke based on the person's failure to satisfy the State Farm judgment; and

(f) The person's license was not suspended for any reason other than the Hiday & Ricke request based on the person's failure to satisfy the State Farm judgment.

## B.    Settlement Relief

### 1.    Non-Monetary Contractual Relief

The Proposed Settlement consists of both contractual non-monetary relief and monetary relief. First, as contractual non-monetary relief provided through the Settlement Agreement, Defendants agree to cease seeking the suspension of driving

privileges for individuals that appear to have carried the statutory minimum of insurance at the time of the relevant accident, subject to the conditions set forth in the Settlement Agreement. While not clearly quantifiable, this relief is valuable for class members.  The change in Defendants' practices will prevent Settlement Class Members or others from having their licenses suspended on such basis, as well as incurring the imposition of reinstatement fees, the cost of SR22 insurance, and other monetary effects associated with license suspensions.

While outside of the Settlement Agreement, Plaintiffs also note that Plaintiffs previously negotiated with the Hiday & Ricke Defendants and the DMV regarding the reinstatement of the driver's licenses of certain of the Settlement Class Members that were suspended at that time. [Dkt. 178]. Other Settlement Class Members had already been reinstated. Along with the reinstatements, the DMV also agreed to remove the requirement that all 441 Settlement Class Members carry SR22 insurance for a period of three years after reinstatement. Finally, the DMV waived any reinstatement fees. The value of having driving privileges reinstated is substantial, as is the value of the removal of the SR22 insurance requirement and waiver of reinstatement fees for all Settlement Class Members.

## 2.    Monetary Relief

The second form of settlement relief is monetary. Defendants have agreed to provide up to $4,016,500.00 to fund this Settlement. Each Settlement Class Member who does not opt out will be eligible to receive two different forms of monetary compensation.

First, each Settlement Class Member who does not opt out will automatically receive an Initial Payment of $1,500 without the need for completing any claim form or other documentation.  This value of this relief totals a maximum of $661,500.00.

Second, all Settlement Class Members who do not opt out also have the option of submitting a Claim Form to seek additional monetary compensation for any additional alleged damages suffered as a result of their driver's license suspensions. Any awards for additional relief shall be determined by a Special Master (proposed to be retired judge Gregory P. Holder) based upon Claim Forms and any accompanying evidence submitted by Settlement Class Members. The Special Master can take all claims into account and award payments accordingly. After payment of anticipated administration costs ($20,000, estimated), special master costs ($35,000, estimated), and attorney fees and expenses ($1,600,000 per the Proposed Settlement), there will be approximately $1,700,000.00 available for payment of submitted claims for additional relief.

Class Counsel will submit a motion for attorney's fees seeking a maximum of $1,500,000 in attorney's fees, which is equal to approximately 25% of the combined value as estimated by Class Counsel (approximately $2,000,000 non-monetary relief (including pre-settlement relief) + $4,016,500 monetary relief = approximately $6,000,000 value). Assuming for purposes of preliminary approval that the Court awards Plaintiffs' counsel such fees, there would be a maximum of $2,361,500 available for payment through the Initial Payment and through the claims for additional relief. With 441 Settlement Class members, this amount allows for an

average additional benefit payment of $3,854.87 (if claims exactly total the maximum amount of funding available with no opt-outs) in addition to an Initial Payment of $1,500.00.

Finally, Class Counsel have reserved the right to seek a reasonable Service Award for the Named Plaintiffs not to exceed $10,000.00 each. Ex. 4, Settlement Agreement, ¶ 52. Although the Eleventh Circuit precluded Service Awards for cases advancing federal claims alone in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), courts within this District have recognized that such awards are still available when state law claims are advanced. *Junior v. Infinity Ins. Co.*, Case No. 6:18-cv-1598-WWB-EJK (M.D. Fla. 2023) ("*Johnson I* examined federal common law, based on a federal cause of action, to arrive at its decision. There is nothing in *Johnson I* to suggest that it is applicable to cases arising under state law."); *Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1110 (M.D. Fla. 2023).

## V.    PRELIMINARY APPROVAL IS WARRANTED AND NOTICE SHOULD BE ISSUED.

Rule 23(e) states that "sufficient information" must be provided to the District Court at the settlement stage for it to determine whether to "give notice to the class." Fed. R. Civ. P. 23(e)(1). Notice to the class is "justified" when and if the Court determines that the class can be certified for "purposes of judgment on the proposal" and where the terms of the settlement appear to be fair, adequate and reasonable. Fed. R. Civ. P. 23(e)(2).

As a preliminary matter, and as extensively briefed in the record, Defendants disagree that the case is suitable for certification of a contested class. However, for purposes of this Proposed Settlement only, Defendants are not contesting that this Action may be certified for settlement purposes only and on behalf of a Settlement Class (as set forth in the Settlement Agreement).

### A.    The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23.

In order for a settlement class to be certified, the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). The Eleventh Circuit has also required the class representative to have standing to sue and the proposed class to be adequately defined and clearly ascertainable. *See Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class ... the district court must determine that at least one named class representative has Article III standing to raise each class subclaim"). A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61(1992). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but [ ] also [must] be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (internal quotation marks omitted). Therefore, the Court must determine that at least one named class representative has Article III standing to raise each class claim or subclaim. *Prado–Steiman*, 221 F.3d at

1279. Further, each Settlement Class Member must have standing to recover damages. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Here Plaintiffs' claims fall into two groups based upon the alleged actions of Defendants and the injuries suffered. The first group of claims stems from the actual suspension of each class member's driver's license by the DMV. All three Named Plaintiffs and all 441 Settlement Class Members had their licenses suspended after a request to the DMV despite being insured at the time of the accident. As a result, Plaintiffs and all Settlement Class Members suffered the same alleged concrete injury of license suspension fairly traceable to the license suspension requests to the DMV. Plaintiffs contend that the legal claims that arise from this conduct are RICO, abuse of process and declaratory judgment. Because liability arising from each of those claims will turn on common evidence of uniform requests for suspension after payments were made by insurance companies and/or under insurance policies on behalf of the class members in the underlying subrogation cases, common questions predominate.

The second group of claims stems from allegations that money was paid to Defendants as a result of the agreements that were reached between Defendants and certain Settlement Class Members in order to have their licenses reinstated. To be clear, Plaintiffs allege once their licenses were suspended by the DMV, Waters, Sangfield, and certain Settlement Class Members entered into agreements with Defendants that included a down payment and an agreement to make monthly payments thereafter, as a condition of Hiday & Ricke agreeing to send a letter to the DMV approving reinstatement. Waters and Sangfield both entered into such

9

agreements, made significant down payments and monthly payments thereafter as a condition of reinstatement. Specifically, Mr. Waters' driver's license was suspended three times. On or about May 25, 2022, Mr. Waters agreed to make an initial down payment of $300 followed by $100 monthly payments thereafter. Mr. Waters made several payments before falling behind and having his license suspended again. Mr. Waters was able to borrow money to pay off his judgment in full in August of 2023.

On August 31, 2022, Ms. Sangfield entered into an agreement with Defendants where she agreed to make a down payment of $640 to get her license back and to make monthly payments of $50 per month thereafter. Although a letter was provided to the DMV allowing Ms. Sangfield's license to be reinstated, she could not afford to pay the SR22 Insurance that was required. As a result, her license remained suspended for approximately three years until it was reinstated on July 15, 2024.

The claims that are "fairly traceable" to the subsequent agreements to pay Defendants in order to have their licenses reinstated include alleged violations of the Florida Consumer Collections Practices Act ("FCCPA"), conversion, economic duress, and unjust enrichment. Because Plaintiff Sanchez was able to obtain counsel, who communicated directly with the DMV, her license was reinstated without Defendants' consent. Because each claim turns on allegations regarding Defendants' common suspension requests, the Named Plaintiffs submit any liability that would be ultimately determined would turn on common evidence.

### 1.    Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of the members is impracticable"; however, impracticable does not mean impossible. *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). Where the class numbers 25 or more, joinder is usually impracticable. *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate…" *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal citations omitted).

Here, there are 441 Settlement Class Members. This number — combined with the complex nature of the claims brought — easily and indisputably satisfies the numerosity requirement under Rule 23(a)(1).

### 2.    Rule 23(a)(2) – Commonality

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there be a common question of law or fact. Not all factual or legal questions raised in the litigation need to be common so long as at least one issue is common to all class members. *Armstead*, 629 F. Supp. at 280; *Pottingar v. Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

Courts have held that a "common nucleus of operative facts" is typically sufficient to meet the commonality requirement of Rule 23(a)(2). *Keele v. Wexler*, 149

F.3d 589, 594 (7th Cir. 1998). "Common nuclei of fact are typically manifest where …

the defendants have engaged in standardized conduct towards members of the

proposed class by mailing to them allegedly illegal form letters or documents." *Id.*

"Where the complaint alleges that the Defendants have engaged in a standardized

course of conduct that affects all class members, the commonality requirement will

generally be met." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004).

Because these claims all depend on the same alleged common practice and

common legal questions, the commonality requirement of Rule 23(a)(2) is also

satisfied for purposes of certifying the Settlement Class described herein.

### 3.    Rule 23(a)(3) – Typicality

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of

the named plaintiff be typical of the claims of the class. A claim is typical if it arises

from the same practice that gives rise to the claims of other class members and the

claims are based on the same legal theory. *Kornberg*, 741 F.2d at 1337.

Here, the Named Plaintiffs' facts are substantially similar to one another and

reflect the typical experience of each Settlement Class Member. The Named Plaintiffs

allege Defendants' process was systemic and used identical template documents to

achieve the outcome of suspending each Settlement Class Member's driver's license.

As for Waters and Sangfield and the five additional claims brought on behalf of the

class by them, their experience of negotiating a down payment and monthly payment

plan as a condition of having their license reinstated and executing a standard consent

form to the DMV is alleged to be typical of all Settlement Class Members who had the

same experience. As a result, collectively the claims of the Named Plaintiffs are typical of the claims of the class members they seek to represent.

### 4.    Rule 23(a)(4) – Adequacy of Representation.

Rule 23(a)(4) of the Federal Rules of Civil Procedure also requires that a named plaintiff provide fair and adequate protection of the interests of the class. "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty*, 513 F.3d 1314, 1323 (11th Cir. 2008) (internal citations omitted).

For the purposes of conditionally certifying the Settlement Class described herein, the Named Plaintiffs in this matter have no interests antagonistic to the class they seek to represent. Named Plaintiffs have participated fully in discovery, gathered voluminous documents in support of Named Plaintiffs' complaints, reviewed drafts, attended multiple mediations, and/or participated in settlement. From the inception of this case, Named Plaintiffs have been focused on ending the practice of allegedly inappropriate driver's license suspensions.

The Named Plaintiffs have also met their burden by retaining counsel experienced in class action litigation. Class counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action. *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D. Fla. 2010). Class Counsel in this case has been appointed lead and class counsel in over 75 class actions in state and federal courts, including cases

before this Court. (**Exhibit 5,** Decl. of B. Warwick). The Langer firm is one of the most experienced consumer firms in the country, and its lawyers have extensive experience litigating RICO claims through class certification and trial. (**Exhibit 6**, Decl. of I. Ackelsberg). Based on the above, the requirements of Rule 23(a)(4) have been satisfied, for the purpose of certifying the Settlement Class described herein.

### B.  Rule 23(b)(3)–Class Action is Superior to Other Available Methods to Resolve This Controversy.

Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance) and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R. Civ. P. 23(b)(3); *Busby*, 513 F.3d at 1326. As discussed above, common questions predominate because the core common question is the legality of Defendants' common practice of seeking driver's license suspensions. Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. "[T]he class action procedure allows for the efficient and economical litigation of a question potentially affecting every class member." *Kelly v. Sabretech Inc.*, 195 F.R.D. 48, 51 (S.D. Fla. 1999).

As to the superiority factor, "[p]roper superiority analysis considers 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Dickens v. GC Servs. Ltd. P'ship*, 706 Fed. Appx. 529, 537-38 (11th Cir. 2017) (*quoting Sacred Heart Health Sys., Inc. v. Humana Military*

*Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010)). When common issues predominate over individual ones, superiority often is found because the less that individual questions are central to litigation, the less interest individual class members have in controlling the litigation. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). Here, common issues are entirely central to the litigation (thus more than satisfying the first prong of the superiority analysis) and the other three prongs also favor class treatment – no action was "already commenced" by any member of the class prior to this litigation, it is desirable and efficient to concentrate class members' identical claims in this forum, and Plaintiff is unaware of any difficulties in the management of this action.

Accordingly, for the purposes of certifying the Settlement Class described herein, the predominance and superiority elements of Rule 23(b)(3) have been met. Where all of the necessary elements of Rule 23(b) have been established, certification of the Settlement Class is appropriate, and the Court should so order.

## C.    The Proposed Settlement Is Fair, Adequate and Reasonable Under Rule 23(e)(3)

As discussed above, the second issue for the Court to determine at the preliminary approval stage under amended Rule 23(e) is whether the Court is "likely" to approve the settlement as fair, adequate and reasonable. There are four factors listed in Rule 23(e)(3) which are to be considered when examining the fairness of a proposed settlement: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

the class is adequate; and (D) the proposal treats class members equitably relative to each other.  The proposed Settlement satisfies each component easily.

### 1.    The Class Representatives and Class Counsel Have Adequately Represented the Class

The Named Plaintiffs' and Class Counsel's adequate representation of the Settlement Class is addressed above.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length.

To warrant preliminary approval, the terms of a class action settlement should reveal that it is "the product of serious, informed, non-collusive negotiations."  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In making this determination, courts begin with a presumption of good faith in the negotiating process. *See Lee v. Ocwen Loan Serv., LLC*, No. 14-cv-60649, 2015 WL 5449813, at*11 (S.D. Fla. Sept. 14, 2015) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("There is a presumption of good faith in the negotiation process.").[3] As explained above, that occurred here.

The Parties here were separately represented by capable counsel experienced in

---

[3]  *Accord Mees v. Skreened, Ltd.*, No. 14-cv-142, 2016 WL 67521, at *2 (S.D. Ohio Jan. 6, 2016) ("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion."); *Archbold v. Wells Fargo Bank, N.A.*, No. 13-cv-24599, 2015 WL 4276295, at *2 (S.D. W. Va. July 14, 2015) (same); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("[T]he courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement:").

complex actions and consumer litigation who negotiated at arm's length. Accordingly, "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42. The Parties' settlement negotiations were protracted, requiring three separate mediation sessions followed by approximately 120 days of negotiating the Term Sheet and final Settlement Agreement. Critically, settlement discussions did not begin until after (1) extensive motion practice, (2) extensive document production; (3) numerous discovery disputes; and (4) depositions.

Thus, the Parties were not "groping in the darkness" during their negotiations, *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977), and the Proposed Settlement was certainly not "the product of uneducated guesswork." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *accord Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").[4]

As a result, this second factor also weighs in favor of granting preliminary approval to the proposed settlement.

### 3.    The Relief Provided to the Class Is Adequate.

Here, the relief provided, both non-economic and economic, is substantial. The

---

[4] *See also Faught v. Am. Home Shield Corp.,* No. 07-cv-1928, 2010 WL 10959223, at *21 (N.D. Ala. Apr. 27, 2010) (fact that "negotiations were supervised by a highly experienced mediator" evidenced arms-length nature of class settlement), *aff'd*, 688 F.3d 1233 (11th Cir. 2011).

non-economic relief will protect the class members and others from the use of this type of driver's license suspension in the future, and the existence of this litigation has resulted in the reinstatement of driving privileges for certain Settlement Class Members. Because Ms. Sangfield, Ms. Sanchez, and certain Settlement Class Members still owe on their judgment debts, there is value to Defendants' agreement not to seek suspension of them in the future pursuant to the term of the Proposed Settlement. The economic relief, including $1,500 (assuming no claim for additional relief is made) and the opportunity to seeks additional relief from the remaining settlement funding, is also significant monetary relief.

This relief is significant considering the novelty and difficulty in bringing these claims. At the hearing on February 14, 2024, this Court stated "[i]t's hard to -- I think the RICO case – I've already said in writing that I think the RICO case is hanging on by a thread." [Dkt. 163, p. 42]. This Court has also noted the novelty of Plaintiff's abuse of process claim. [*Id.*]. Further, the Florida Financial Responsibility Law (Chapter 324), which deals with the license suspension issues, does not provide for a private right of action. When the relief provided by the Proposed Settlement is compared to the legal hurdles in the case, the relief obtained is more than adequate.

Specifically, Rule 23(e)(2)(c) provides four additional considerations that must be taken into account when determining whether the relief being provided under the Proposed Settlement is adequate: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award

of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Each factor supports approval.

### a. The costs, risks, and delay of trial and appeal

Significant legal hurdles remained in the case. First, the parties had not yet briefed any motions to dismiss that the new claims would have invited, which would have contained extensive briefing on numerous legal issues. Second, Plaintiff Sanchez had yet to prevail on her motion to compel with respect to the wide-reaching attorney-client privilege and work product claims of the Defendants. Third, this entire theory was novel and has not been successfully litigated anywhere in the country.

The risk involved with delay in resolution potentially could have meant years of additional suspension and years of additional SR22 payments for the Settlement Class. In addition, class certification, summary judgment, and a potential appeal of any Rule 23 determination and/or the merits also contains a substantial level of risk and years of delay. This factor therefore weighs heavily in favor of approval of this Settlement Agreement.

### b. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims

The proposed relief to the Settlement Class takes two major factors into account. First, there is a disparity between the harms. For example, Plaintiff Sanchez had her license suspended for just over three weeks and she did not make payments to Defendants in order to be reinstated. On the other hand, Waters and Sangfield had their licenses suspended for almost 2 years and 3 years, respectively. The disparity

between these harms is substantial. To provide each Settlement Class Member with the same damage figure would be to ignore the substantial variation in harms suffered. The claims made process, combined with a flat award paid to everyone, provides a mechanism for fairly compensating all Settlement Class Members.

An additional factor of this Settlement is that State Farm continues to hold valid and outstanding legal judgements against certain Settlement Class Members. Although Defendants have agreed to change certain collection practices with respect to the Settlement Class, they have not waived or limited the right to legally pursue the underlying judgment balances through other means. Absent a class action settlement, the Settlement Class is likely to be wholly unaware that their suspensions were challenged or that failure to make a payment in the future will not result in an immediate suspension.

Considering each of these factors, the Proposed Settlement should be approved.

### c.  The terms of any proposed award of attorney's fees, including timing of payment

When a representative party has conferred a substantial benefit upon a class, class counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011) (citing *Camden I Condominium Assn. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.").

The Eleventh Circuit has stated that "the majority of fees in these cases are reasonable where they fall between 20–25% of the claims." *Id.* The 25% "benchmark" is so well engrained in class settlement jurisprudence that only "[w]here the requested fee exceeds 25%, the court is instructed to apply the twelve Johnson factors." *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1242 (11ᵗʰ Cir. 2011).

When determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the compensatory relief, but also the economic value of any non-monetary relief obtained for the class. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) ("The attorneys' fees in a class action can be determined based upon the value of the total fund, not just the actual payout to the class."); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[C]ourts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees.") (internal quotation and citation omitted).

Here, Plaintiffs' requested attorney fee of $1.5 million is equal to approximately 25% of the value of the relief obtained for and/or to be provided to the Settlement Class, as estimated by Plaintiff's counsel. The Proposed Settlement provides non-monetary benefits to the Settlement Class as well as monetary benefits; and Plaintiffs' counsel submits that pre-settlement benefits were obtained for the Settlement Class, which include non-monetary benefits stemming from counsel's efforts in having the driving privileges of class members reinstated by the DMV and having the three-year

SR22 insurance requirement removed from the driving records of all 441 class members (estimated $1,400 per year x 3 years = $4,200 for each of 441 class members = $1,852,200). The DMV also removed the applicable $250-$500 reinstatement fees for each of the reinstated class member that was suspended ($250 per reinstatement x 258 = $64,600). Fla. Stat. § 324.0221(2)(b)(3). Finally, adding an extremely modest value of only $1,000 per class member for having their licenses reinstated provides an additional value to the Settlement ($1,000 per reinstatement x 258 = $258,000). Thus, the combined value of these non-monetary class benefits, as estimated by the Named Plaintiffs' counsel, is approximately $2,000,000 and this amount should be considered in determining the value of the Proposed Settlement. *See In re Home Depot Inc.*, 931 F.3d 1065, 1094 (11th Cir. 2019) ("A rule establishing that class counsel can get no credit for settlements with putative class members done before the class as a whole settles would entrench the very unjust enrichment and collective-action problem that class actions are designed to solve. Plus, '[t]here is no question ... that federal courts may award counsel fees based on benefits resulting from litigation efforts even where adjudication on the merits is never reached, e.g., after a settlement.'").

$1.5 million of attorney fees is equal to approximately 25% of the combined estimated settlement value and value of pre-settlement relief (approximately $2,000,000 non-monetary relief (including estimated pre-settlement relief) + $4,016,500 Monetary Relief = $6,000,000.00 Settlement Value). This approximates the 25% "benchmark" for attorney fees approved in the Eleventh Circuit. *Camden I,* 946 F.2d at 774; *In re Bluetooth Headset*, 654 F.3d 935, 943 (9th Cir. 2011) (quoting *In re*

*General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). Prior to Final Approval, Class Counsel will submit a separate Motion for Final Approval of Attorneys' Fees and Costs, which will also address any objections raised.

### d. Any agreement required to be identified under Rule 23(e)(3)

The final factor for determined fairness under Rule 23(e)(3) reads:

> (1) Identifying Agreements. The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

It is widely understood that this section seeks disclosure of any and all side agreements or details that may not be clearly set forth in the settlement. Here, there are no additional agreements to be identified.

### 4. The proposal treats class members equitably relative to one another

The final fairness factor to be considered under amended Rule 23(e)(2) asks whether the proposed settlement treats class members equitably relative to one another. The purpose of this factor is to make certain that the settlement does not favor some class members at the expense of others. As discussed above, the two forms of monetary relief allow for disparate payments to account for different damages.

The claim forms are designed to walk each class member through different types of harm that may apply and how to substantiate their claims, although there are no specific evidentiary requirements. A copy of the Claim Form is attached as **Exhibit 7**. The Special Master will review all claims and determine the appropriate amount of

damages. There is simply no better way to determine damages that is more fair than to compensate each class member for the actual harms they suffered. **Exhibit 7**, Claim Form. Because there is no disparity between the process applied to the 441 Settlement Class Members, this final factor also weighs in favor of this Court finding that the proposed settlement is fair, adequate and reasonable, such that the Court is "likely to approve the proposal under Rule 23(e)(2)."

## VI.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS

The Court should also approve the Parties' plan for disseminating notice to the members of the Settlement Class. "The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required." *Adams v. S. Farm Bureau Life Ins. Co.*, 417 F. Supp. 2d 1373, 1380, n.6 (M.D. Ga. 2006), *aff'd*, 493 F.3d 1276 (11th Cir. 2007); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice.").

The threshold inquiry concerning the sufficiency of class notice is whether the notice is reasonably calculated to apprise the class of the pendency of the action, of the terms of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jaqueline*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Notice of a class settlement ensures that the due process rights of class members are protected. *See, e.g.*, *Pearson v. Ecological Sci. Corp.*,

522 F.2d 171, 176-77 (5th Cir. 1975). Accordingly, a court should ensure that "the best notice that is practicable under the circumstances" is disseminated "in a reasonable manner to all class members who would be bound by the proposal," including through "individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B), (e)(1).

The proposed notice to be issued is attached hereto as **Exhibit 8**. The proposed notice informs the Settlement Class Members of the nature of the pending action and the general terms of the Proposed Settlement. The notice also provides the settlement website information where the class member can obtain additional information about the case including a copy of the Amended Complaint, Settlement Agreement, Notice and Claim Form. The notice also provides details on how and when to opt out or object to the Proposed Settlement. At bottom, the proposed notice provides Settlement Class Members with sufficient information and time to make an informed and intelligent decision about joining or opting out of the Settlement. The proposed notice satisfies the requirements of Rule 23 and due process. Accordingly, the Court should approve the form and content of the notice proposed by the Settlement.

## VII.    **CONCLUSION**

Based on all of the foregoing, Plaintiff Sanchez respectfully requests that the Court: (1) preliminarily approve the Settlement; (2) find that the Parties have shown that the Court will likely approve the Settlement Agreement under Federal Rule 23(e)(2) and certify the Settlement Class for purposes of judgment in accordance with the Settlement Agreement, such that giving of notice to all Settlement Class Members

who would be bound by the Settlement Agreement is justified; (3) approve the proposed plan of notice to the Settlement Class and direct that notice be provided to the Settlement Class in accordance with the notice program; (4) set Opt-Out and Objection Deadlines; (6) preliminarily enjoin all Settlement Class Members from commencing, prosecuting, intervening in, or participating as a plaintiff or class member in any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims against any of the Released Parties; (7) stay all proceedings in this civil action except those related to approval and effectuation of the Settlement Agreement; (8) approve the proposed schedule for disseminating notice to the Settlement Class Members; (9) grant leave to file the Third Amended Complaint; and (10) schedule a hearing pursuant to Federal Rule of Civil Procedure 23(e) to finally determine whether the Proposed Settlement is fair, reasonable, and adequate, and that the elements for certification under Rule 23(a) and (b) are satisfied. Pursuant to the terms of the Proposed Settlement, the Court's preliminary approval of the Proposed Settlement must be substantially in the form of **Exhibit 1**.

## **LOCAL RULE 3.01(g) CERTIFICATE OF CONFERRAL**

While Defendants do not adopt or agree to all the allegations and arguments set forth herein, Defendants do not oppose the relief sought.

Dated: March 26, 2025

**VARNELL & WARWICK, P.A.**

/s/ Jeffrey L. Newsome
Jeffrey L. Newsome; FBN: 1018667
Janet R. Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573

Pamela G. Levinson, FBN: 538345
Christopher J. Brochu; FBN: 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone:  (352) 753-8600
Facsimile:  (352) 504-3301
*jnewsome@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*plevinson@vandwlaw.com*
*cbrochu@vandwlaw.com*
*ckoerner@vandwlaw.com*

LANGER GROGAN & DIVER, P.C.

Irv Ackelsberg (Pro Hac Vice)
Mary Catherine Roper (Pro Hac Vice)
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Telephone: (215) 320-5660
Fax: (215) 320-5703
iackelsberg@langergrogan.com
mroper@langergrogan.com

***Attorneys for Plaintiff, and on behalf of
all others similarly situated***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 26, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<u>/s/ Jeffrey L. Newsome</u><br>Jeffrey L. Newsome