# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |
|---|---|
| CARMEN DANIELLE MORA SANCHEZ, BRANDON RASHARD WATERS, and KASHANA SANGFIELD on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, HIDAY & RICKE, P.A., JEFF RICKE, an individual,<br><br>      Defendants. | Case No.: 3:21cv-00372-TJC-LLL<br><br>CLASS ACTION |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES ......................................................................... iii

I.      INTRODUCTION ............................................................................1

        A.      Non-Monetary Value to the Class ......................................2

        B.      Monetary Value to the Class ..............................................3

        C.      The Unique Risks and Difficulties of the Action..................3

        D.      Class-Wide Support ...........................................................4

II.     SUMMARY OF THE SETTLEMENT TERMS ..........................5

III.    MOTION FOR FINAL APPROVAL ...........................................7

        A.      Legal Standard for Final Approval......................................8

        B.      The Proposed Settlement Meets the Rule 23(e) Criteria for Final
                Approval .............................................................................9

                1.      Adequacy of Representation ....................................9

                2.      Settlement Was Negotiated at Arm's Length............11

                3.      Adequacy of the Settlement Relief ...........................12

                        i.      Settlement Benefits are Outstanding...............12

                        ii.     Costs, Risks and Delay of Trial and Appeal ..................13

                        iii.    Effective Method of Distributing Relief and
                                Processing Claims.........................................14

                        iv.     Reasonable Terms Relating to Attorneys' Fees..............15

                        v.      Agreements Identified Pursuant to Rule 23(e)(3) ............15

|  | 4. | Equitable Treatment of Settlement Class Members Relative to Each Other - Rule 23(e)(2)(D) | 15 |

|  | 5. | The Opinions of Class Counsel, Plaintiffs, and Absent Settlement Class Members Favor Approval of the Proposed Settlement | 16 |

IV. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........................................................................ 17

    A. The Settlement Class Satisfies the Rule 23(a) Requirements .............. 17

    B. The Settlement Class Also Satisfies the Rule 23(b)(3) Requirements ........................................................................... 19

V. THE NOTICE PROGRAM AND CLAIMS PROCESS SATISFY DUE PROCESS AND RULE 23 ................................................ 20

VI. APPLICATION FOR ATTORNEYS' FEES AND COSTS ........................ 21

VII. CONCLUSION ........................................................................... 22

## TABLE OF AUTHORITIES

**Cases**                                                              **Pg(s)**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................................17

*Americans v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ................................................................16

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ............12

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ........................................................ 8, 11, 12

*Borcea v. Carnival Corp.*,
238 F.R.D. 664 (S.D. Fla. 2006)................................................................11

*Burrow v. Forjas Taurus S.A.*,
No. 16-21606-CIV, 2019 WL 4247284 (S.D. Fla. Sept. 6, 2019) ..................11

*Busby v. JRHBW Realty*,
513 F.3d 1314 (11th Cir. 2008).....................................................................19

*City of St. Petersburg v. Total Containment, Inc.*,
265 F.R.D. 630 (S.D. Fla. 2010) ................................................................19

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 2008) ....................................................................13

*Ferron v. Kraft Heinz Foods Co.*,
No. 20-CV-62136-RAR, 2021 WL 2940240 (S.D. Fla. July 13, 2021) ...........16

*Francisco v. Numismatic Guar. Corp. of Am.*,
No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ...........................10

*Fresco v. Auto Data Direct, Inc.*,
    No. 03–61063–CIV, 2007 WL 2330895 (S.D. Fla. May 14, 2007)..................8

*In re Checking Account Overdraft Lit.*,
    830 F.Supp.2d 1330 (S.D.Fla.2011) ............................................................12

*In re Equifax*,
    999 F.3d 1247 (11th Cir. 2021)............................................................ 12, 14

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ........................................................................8

*Kilgo v. Bowman Trans.*,
    789 F.2d 859 (11th Cir. 1986) ......................................................................17

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984).....................................................................18

*Lee v. Ocwen Loan Servicing, LLC*,
    No. 14-CV-60649, 2015 WL 5449813 (S.D. Fla. Sep. 14, 2015).....................8

*Lipuma v. American Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005)................................................... 10, 11

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007)..........................................................11

*Petersen v. Am. Gen. Life Ins. Co.*,
    No. 3:14-CV-100-J-39JBT, 2019 WL 11093816 (M.D. Fla. Oct. 22, 2019)......9

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ....................................................................................20

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010)....................................................................19

*Smith v. Wm. Wrigley Jr. Co.*,
    No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010) ......................8

*Wal- Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................18

**Statutes:**

Fed. R. Civ. P. 23 .................................................................................*passim*

Fla. Stat. § 324.021(7) ...............................................................................5

Fla. Stat. § 627.7415 .................................................................................5

Fla. Stat. § 627.742 ...................................................................................5

28 U.S.C. § 1715(b) .................................................................................23

Plaintiffs, Carmen Danielle Mora Sanchez ("Plaintiff Sanchez"), Brandon Rashard Waters ("Plaintiff Waters"), and Kashana Sangfield ("Plaintiff Sangfield"), on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), by and through undersigned counsel, hereby file this motion for final approval of class action settlement, certifying the Settlement Class, appointing Class Counsel, appointing Plaintiffs as Class Representatives, approving incentive awards, awarding attorneys' fees and costs, and entering final judgment.

Following several years of litigation, voluminous discovery, briefing of novel issues regarding Florida's Financial Responsibility Law, and months of negotiation, the Parties reached an arms-length resolution. On May 12, 2025, this Court preliminarily approved the Proposed Settlement. (Dkt. 198). Pursuant to the Court's Order Preliminarily Approving Settlement, Plaintiffs now move, pursuant to Fed. R. Civ. P. 23, for final approval of the Settlement. Final approval is appropriate because the terms (memorialized by the Settlement Agreement at Dkt. 193-4) are fair, adequate, and reasonable, and because the Proposed Settlement provides substantial monetary and non-monetary relief for the Settlement Class.

# I.    __INTRODUCTION__

Through the Proposed Settlement, Plaintiffs reached a resolution of this litigation with Defendants, Hiday & Ricke, P.A. ("H&R"), Jeff Ricke (collectively with H&R, the "H&R Defendants"), and State Farm Mutual Automobile Insurance Company ("State Farm") (collectively, "Defendants"). Coupled with Plaintiffs' counsel's additional efforts to address other issues involving driver's license

suspensions and insurance requirements, the overall resolution would result in: (1) changes in Defendants' judgment collection practices involving at-fault drivers who have the minimum amount of insurance required by Florida's Financial Responsibility Law; (2) reinstatement of 258 Settlement Class Members' driving privileges; (3) removal of SR22 insurance obligations for Settlement Class Members to the extent there were any such obligations; (4) waiver of reinstatement fees; and (5) up to $4,016,500 in monetary relief. The Proposed Settlement follows months of negotiations and three separate mediation sessions with retired Judge Michael Hanzman. This Proposed Settlement is an excellent result for the Settlement Class particularly considering the risks, uncertainties, and expense associated with this novel litigation.

### A.    Non-Monetary Value to the Class

Since Notice has issued, Plaintiffs' counsel has received over a dozen calls from Settlement Class Members who were informed that their driving privileges had been reinstated as a result of this Litigation. **Exhibit A**, Decl. J. Newsome ¶¶ 9–11. While each Settlement Class Member was pleased to hear of the monetary relief made available, the first question was always regarding whether the Settlement Class Member could legally drive again *Id.* Class Counsel was pleased to report to each Settlement Class Member that their driving privileges had been reinstated and that they may not be suspended again for failure to pay the judgment debt at issue. *Id.*, ¶ 11. In addition, for some Settlement Class Members who were reinstated already, the financial burden of SR22 insurance had kept them off the road. Even when they could

legally drive, many simply could not practically afford the additional cost of SR22 insurance premiums, like named Plaintiff Sangfield. While the majority of the briefing and settlement negotiation concerned the monetary relief, the most important relief resulting from this litigation is and always has been the right of each Class Member to live, work, and care for loved ones without concern that their driving privileges may be revoked for failure to satisfy a judgment.

### B.    Monetary Value to the Class

The Proposed Settlement provides for two forms of monetary relief. As the first payment, each Settlement Class Member who does not opt out will automatically receive an Initial Payment of $1,500 without the need for completing any claim form or other documentation. (Dkt. 193-4, ¶ 35).  The value of this relief totals a maximum of $661,500.00. Second, all Settlement Class Members who do not opt out also have the option of submitting a Claim Form to seek further monetary compensation for any additional alleged damages suffered as a result of their driver's license suspensions. (*Id.*, ¶¶ 36–49). Any awards for additional relief  shall be  determined by a Special Master (retired judge Gregory P. Holder) based upon Claim Forms and any accompanying evidence submitted by Settlement Class Members. *Id.* There will be approximately $1,700,000.00 available for payment of submitted claims for additional relief, subject to the number of initial payment checks cashed and the amount of administration expenses incurred.

### C.    The Unique Risks and Difficulties of the Action

Significant legal hurdles remained in the case. First, the parties had not yet

briefed any motions to dismiss or other dispositive motions that the newly added claims (Dkt. 199), which would have entailed extensive briefing on numerous legal issues. Second, Plaintiff Sanchez's motion to compel with respect to the wide-reaching attorney-client privilege and work product claims of the Defendants was not decided. Third, the entire legal theory of this action was novel and has not been successfully litigated anywhere in the country.

The risk involved with delay in resolution potentially could have meant years of additional suspension and years of additional SR22 payments for the Settlement Class. In addition, dispositive motions, class certification, and a potential appeal of any Rule 23 determination and/or the merits also entail a substantial level of risk and years of delay. This factor therefore weighs heavily in favor of approval of this Settlement Agreement.

### D.    Class-Wide Support

Based on the lack of objections and opt outs, the Settlement Class has overwhelmingly approved the Proposed Settlement. Through multiple mailing efforts to provide notice to all Settlement Class Members, the claims administrator delivered notice successfully to all but 21 Settlement Class Members, achieving a 94.99% success rate in terms of delivery. **Exhibit B**, Decl. of ALCS, ¶ 7. While Plaintiffs' Counsel and the administrator fielded over a dozen calls and emails from Settlement Class Members, no Settlement Class Member has opted-out or objected as of the date of this

Motion. Ex. A, Decl. J. Newsome ¶¶ 9–11.[1]

## II.   **SUMMARY OF THE SETTLEMENT TERMS**

The Settlement Class consists of 439[2] persons identified through the H&R

Defendants' search of their records. (Dkt. 193-4, ¶¶ 10–12).  All 439 Settlement Class

Members meet the following criteria:

(a) The person was a judgment debtor of State Farm between April 7,
2017 and June 11, 2024 pursuant to a judgment obtained by State Farm
against that person (the "State Farm judgment");

(b) The State Farm judgment against that person arose from an
automobile accident with a State Farm insured;
(c) At the time of the accident giving rise to the State Farm judgment, the
person maintained at least the minimum required insurance pursuant to
Fla. Stat. § 324.021(7) (2017 to date). That minimum insurance is: (a) In
the amount of $10,000 because of bodily injury to, or death of, one person
in any one crash; (b) Subject to such limits for one person, in the amount
of $20,000 because of bodily injury to, or death of, two or more persons
in any one crash; (c) In the amount of $10,000 because of injury to, or
destruction of, property of others in any one crash; and (d) With respect
to commercial motor vehicles and nonpublic sector buses, in the amounts
specified in §§ 627.7415 and 627.742, respectively. See Fla. Stat. §
324.021(7);

(d) The person (or their automobile insurer) tendered payment to State
Farm;

(e) The person's driver's license was suspended between April 7, 2017
and June 11, 2024 pursuant to a request by Hiday & Ricke based on the
person's failure to satisfy the State Farm judgment; and

(f) The person's license was not suspended for any reason other than the

---

[1] The deadline for objections to the Proposed Settlement was July 15, 2025. (Dkt. 198
at 17.) No objections have been received or filed with the Court. As the deadline for
opt outs is August 12, 2025 (*id.*), on August 15, 2025, Plaintiffs will file a supplemental
notice confirming that no objections or opt-outs have been received.
[2] Upon receipt of the Class List, the number of Class Members was reduced from 441
to 439 due to the presence of duplicate entries.

Hiday & Ricke request based on the person's failure to satisfy the State Farm judgment.

The Proposed Settlement consists of both contractual non-monetary relief and monetary relief. First, as contractual non-monetary relief provided through the Settlement Agreement, Defendants agree to cease seeking the suspension of driving privileges for individuals who carried the statutory minimum of liability insurance at the time of the relevant accident, subject to the conditions set forth in the Settlement Agreement. The change in Defendants' practices will prevent Settlement Class Members or others with State Farm judgments from having their licenses suspended under such conditions, as well as incurring the imposition of reinstatement fees, the cost of SR22 insurance, and other monetary effects associated with license suspensions.

The second form of settlement relief is monetary. Defendants have agreed to provide up to $4,016,500.00 to fund this Settlement. Each Settlement Class Member who does not opt-out will be eligible to receive two different forms of monetary compensation.

First, each Settlement Class Member who does not opt out will automatically receive an Initial Payment of $1,500 without the need for completing any claim form or other documentation.  The value of this relief totals a maximum of $661,500.00.

Second, all Settlement Class Members who do not opt out also have the option of submitting a Claim Form to seek additional monetary compensation for additional alleged damages suffered as a result of their driver's license suspensions. Any awards

6

for additional relief  shall be  determined by a Special Master (proposed to be retired

judge Gregory P. Holder) based upon Claim Forms and any accompanying evidence

submitted by Settlement Class Members. The Special Master can take all claims into

account and award payments accordingly. After payment of initial claims

($661,500.00), anticipated administration costs ($20,000, estimated), special master

costs ($35,000, estimated), attorney fees and expenses ($1,600,000 per the Settlement

Agreement), Plaintiffs estimate there will be approximately $1,700,000.00 available

for payment of submitted claims for additional relief.

Class Counsel submitted a motion for attorney's fees and costs and class

representative awards of $10,000 for each named Plaintiff. (Dkt. 200).

In exchange, the Settlement Class Members provide a full release of all claims

arising out of their driver's license suspensions, as outlined in the Settlement

Agreement. (Dkt. 193-4, ¶¶ 78–80).

## III.  MOTION FOR FINAL APPROVAL

As a prerequisite to directing Notice of the Settlement, this Court determined it

would likely be able to approve the Proposed Settlement and certify the Settlement

Class. (Dkt. 199); *see* Fed. R. Civ. P. 23(e)(1)(B). Nothing has changed to affect the

Proposed Settlement since Notice was issued, and this Court should therefore

conclude that the Proposed Settlement remains fair, reasonable, and adequate, and

that it meets the certification requirements of Rule 23(a) and (b)(3), and grant Final

Approval. *See* Fed. R. Civ. P. 23(e)(2).

### A.     Legal Standard for Final Approval

The Eleventh Circuit recognizes the strong public and judicial policy favoring the pretrial settlement of class-action lawsuits. *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813 *4 (S.D. Fla. Sep. 14, 2015). "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149 at *3 (S.D. Fla. June 15, 2010) (citation omitted). Approving a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). The Court previously granted preliminary approval of the Proposed Settlement. (Dkt. 198).

"Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493. In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Proposed Settlement is clearly within the range of reasonableness, and it satisfies all standards for Final Approval, including Plaintiffs' obligations under Rule 23(e)(1). This Court should "[focus] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23(e), Committee Notes on Rules–2018 Amendment.

Rule 23(e)(2) includes a mandatory but non-exhaustive set of final approval
criteria:

> (A) the class representatives and class counsel have adequately represented the
> class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the
>> class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing
>> of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Final Approval is warranted under the applicable factors.

**B.    The Proposed Settlement Meets the Rule 23(e) Criteria for Final
Approval**

**1.    <u>Adequacy of Representation</u>**

In evaluating the adequacy of class counsel and the class representative, the
Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has
instructed courts to consider whether class counsel and plaintiffs "had an adequate
information base" before negotiating and entering into the settlement. *Petersen v. Am.
Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *6 (M.D. Fla. Oct.
22, 2019). The proper inquiry is whether the plaintiffs and class counsel engaged in
enough discovery to afford them an "adequate appreciation of the merits of the case[.]"
*Id.* at *5 (footnote and additional citation omitted). *See also Francisco v. Numismatic*

*Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008)

("Class Counsel had sufficient information to adequately evaluate the merits of the

case and weigh the benefits against further litigation."). Here, Plaintiffs are adequate

representatives. Their interests are coextensive and do not conflict with the class

members they seek to represent. They have the same interest in the settlement relief,

and the absent Settlement Class Members have no diverging interests. Likewise, Class

Counsel are experienced in complex class action litigation, including similar class

actions challenging unlawful fees, and they devoted substantial time and resources to

vigorous litigation, evaluating the merits, and weighing the benefits against further

litigation. (Dkts. 193-5, 193-6, 200-1).

Courts consider the stage of proceedings at which a settlement is achieved "to

ensure that Plaintiffs had access to sufficient information to adequately evaluate the

merits of the case and weigh the benefits of settlement against further litigation."

*Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). As

detailed above, the Proposed Settlement here was reached after contested litigation,

briefing, and extensive discovery was conducted. (Dkt. 200-1, ¶¶ 3–12). Class Counsel

went into a settlement conference with Mediator Hanzman armed with full knowledge

of the potential damages at issue and knowing the arguments for and against the merits

and class certification. *Id.* Thus, Class Counsel was (and remains) well-positioned to

evaluate the Plaintiffs' claims' strength, Defendants' defenses, and prospects for

success.

## 2.    <u>Settlement Was Negotiated at Arm's Length</u>

"A proposed settlement action should be approved as long as it is 'fair, adequate and reasonable and it is not the product of collusion between the parties.'" *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 672 (S.D. Fla. 2006) (quoting *Bennett,* 737 F.2d at 986); *see also Lipuma*, 406 F. Supp. 2d at 1318-19 (settlement approved where "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

Here, the Proposed Settlement is the result of extensive, arm's-length negotiations between experienced attorneys with the help of an experienced mediator familiar with class action litigation and with the legal and factual issues at the center of this Action. Class Counsel are particularly experienced in this type of litigation, certification, trial, and settlement of class action cases. (Dkts. 193-5, 193-6). This experience proved beneficial to Plaintiffs and the Settlement Class during Settlement negotiations. Class Counsel conducted significant discovery before mediation, enabling them to gain a complete understanding of the evidence related to central issues, including damages and liability, and prepare for well-informed settlement negotiations. *Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *8 (S.D. Fla. Sept. 6, 2019) (the record showed substantial discovery, which supported finding that the settlement was reasonable). The negotiations that culminated in the Proposed Settlement were conducted over many months, were at arm's-length and extensive, and overseen by the mediator. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d

1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part

because it was overseen by "an experienced and well-respected mediator").

    For these reasons and those discussed related to attorneys' fees below, there was

no fraud or collusion in arriving at the Proposed Settlement. *Bennett*, 737 F.2d at 986.

Thus, Rule 23(e)(2)(B) is satisfied.

### 3.    Adequacy of the Settlement Relief

    Class Counsel have significant class action experience and strongly believe the

Proposed Settlement is fair, reasonable, and adequate when considering the risks of

litigation. (Dkt. 200-1, ¶¶ 8–15); Ex. A, Decl. J. Newsome ¶¶ 3–8. The Court may rely

upon the judgment of experienced counsel. *See, e.g.*, *In re Equifax*, 999 F.3d 1247, 1274

(11th Cir. 2021) (trial judge "should be hesitant to substitute its own judgment for that

of counsel") (internal quotations omitted). Rule 23(e)(2)(C)'s factors also show the

Proposed Settlement is fair, reasonable, and adequate.

### i.    *Settlement Benefits are Outstanding*

    In determining a settlement's fairness given the potential range of recovery, the

Court should be guided by "the fact that a proposed settlement amounts to only a

fraction of the potential recovery does not mean the settlement is unfair or

inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988),

*aff'd*, 899 F.2d 21 (11th Cir. 1990). *See also In re Checking Account Overdraft Lit.*, 830

F.Supp.2d 1330, 1346 (S.D.Fla.2011) (a recovery of between 9% and 45% was an

"exemplary result"). When evaluating "the terms of the compromise in relation to the

likely benefits of a successful trial . . . the trial court is entitled to rely upon the

judgment of experienced counsel for the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 2008). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Here, the range of possible recoveries (or lack thereof) demonstrates that the Proposed Settlement is fair, adequate and reasonable. Although it is possible a jury could award greater damages at trial, it is also possible that the case would not have been certified as a class action, the newly added claims would not have survived a motion to dismiss or other dispositive motions, Plaintiffs would not prevail on the merits, and/or the jury could award less damages. Given the novel and complex nature of the claims, a potential average recovery amounting to $7,128.32 per class member (this average deducts expected attorney's fees and costs of $1,600,000) is exceptional.

### ii.    Costs, Risks and Delay of Trial and Appeal

While Plaintiffs' counsel believes they have a strong case, Defendants had significant legal defenses to the underlying claims and class certification. The case would have certainly drawn at least one appeal to the Eleventh Circuit, by either side. In addition, novel issues of first impression regarding the extent of the attorney-client privilege could have been decided in the case and warranted interlocutory appeal. Finally, and most importantly, the delays in resolution could have resulted in additional time spent with licenses suspended.

All that is certain is that, with continued litigation, the putative class would face a notably longer wait before receiving any potential recovery, if they received any

recovery or other relief at all. Thus, in Class Counsel's experience and informed judgment, the Proposed Settlement represents an excellent class recovery, and the benefits outweigh the risks of continued litigation. *See In re Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"); Ex. A, Decl. J. Newsome ¶¶ 3–13. This Proposed Settlement provides substantial relief without further delay and avoids the risk of an adverse judgment at trial, an adverse ruling on a dispositive motion, and/or an adverse ruling on appeal. Rule 23(e)(2)(C)(i) is satisfied.

### iii.    *Effective Method of Distributing Relief and Processing Claims*

All Settlement Class Members who do not opt out will receive a $1,500 initial payment by check without the need for submitting any claim form. This provides a base line or floor of monetary relief to all Settlement Class Members without regard to how long their suspension lasted or any other individual circumstances. Thereafter, the process for submitting a claim for additional relief is one of the most fair and efficient procedures Class Counsel has ever participated in. Ex. A, Decl. J. Newsome ¶ 13.  Settlement Class Members will fill out a questionnaire and may, but are not required to, submit supporting documentation to support a claim for additional compensation. (Dkt. 197-7). Among other questions, the questionnaire asks (1) how many times the Settlement Class Member's license was suspended; (2) the duration of suspension; (3) inability to meet household and family obligations as a result of suspension, (4) adverse employment actions (demotion, write up, firing); and (5) any other impacts from the suspension. *Id.* Based on this questionnaire, the Special Master

may potentially administer 100% of each Class Member's cognizable damages, which could be paid on *pro rata* basis if Defendants' Maximum Funding Amount is reached. (Dkt. 193-4, ¶ 41).

Settlement Class Members will be treated equally and will be compensated by the same equitable mechanism as other members of the respective Settlement Class through fair, convenient, and effective Settlement Class Member Payments. Ex. A, Decl. J. Newsome ¶¶ 3–13. Thus, this Settlement satisfies Rule 23(e)(2)(C)(ii).

### iv.    *Reasonable Terms Relating to Attorneys' Fees*

Whether the attorneys' fees are reasonable on their own terms is a Fed. R. Civ. P. 23(h) analysis. By contrast, under Rule 23(e)(2)(C)(iii), the question is not the fee amount in a vacuum, but rather whether attorneys' fees impact the other settlement terms. Here, attorneys' fees do not impact the other terms of the Proposed Settlement and the attorneys' fees sought are fair, adequate, and reasonable. (Dkt. 200).

### v.    *Agreements Identified Pursuant to Rule 23(e)(3)*

Rule 23(e)(3) states "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are no agreements other than what is set forth in the Settlement Agreement itself.

### 4.    <u>Equitable Treatment of Settlement Class Members Relative to Each Other - Rule 23(e)(2)(D)</u>

As discussed above, each Settlement Class Member is eligible to receive the same benefits as other members based on the Initial Payment, and the same equitable

mechanism will be used to adjudicate and distribute the Claim for Additional Relief. Thus, the Proposed Settlement treats all Settlement Class Members equally and equitably.

> **5.** **The Opinions of Class Counsel, Plaintiffs, and Absent Settlement Class Members Favor Approval of the Proposed Settlement**

Class Counsel endorse the Proposed Settlement. Ex. A, Decl. J. Newsome ¶¶ 3–13.  The Court should give "'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'" *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *12 (S.D. Fla. July 13, 2021) (citations omitted).

There has been no opposition to the Proposed Settlement from any Settlement Class Member. *See* ALCS Decl. at ¶ 11. As of this filing, there are no opt-outs and no objections. *See id*. at ¶ 10. Although the deadline for objections was July 15, 2025, and the deadline for exclusions is August 12, 2025, if any receipt of such occurs before the Final Fairness Hearing, Plaintiffs' counsel will advise the Court.

This lack of opposition to date is a clear indication the Settlement Class agrees with the Proposed Settlement. Even when a timely objection is made, it is settled law that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002). Here there are no objectors.

Thus, in Class Counsel's experience and informed judgment, the Proposed Settlement represents an excellent recovery and the benefits of the Proposed Settlement outweigh the risks and uncertainties of continued litigation, including, the risks, time, and expenses associated with continuing to litigate, dispositive motions, class certification proceedings, completing a trial, and any appellate review.

## IV. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

This Settlement Class meets the requirements for certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Generally, an action may be certified for class treatment for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The Court conditionally certified the Settlement Class, Dkt. 199, and there is no reason to deviate from that ruling.

### A. The Settlement Class Satisfies the Rule 23(a) Requirements

*Numerosity:* Here, there are 439 Settlement Class Members. This number — combined with the complex nature of the claims brought — easily and indisputably satisfies the numerosity requirement under Rule 23(a)(1) as joinder is impractical. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied with at least 31 class members "from a wide geographical area").

*Commonality:* "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiffs' common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349

(2011) (citation omitted). Because these claims all depend on the same alleged common practice and common legal questions (whether driver's license suspension was legally sought and obtained), the commonality requirement of Rule 23(a)(2) is satisfied for purposes of certifying the Settlement Class described herein.

*Typicality:* Fed. R. Civ. P. 23(a)(3) typicality is satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.,*741 F.2d 1332, 1337 (11th Cir. 1984). Here, the Named Plaintiffs' facts surrounding suspension are substantially similar to one another and reflect the typical experience of each Settlement Class Member. The Named Plaintiffs allege Defendants' process was systemic and used identical template documents to achieve the outcome of the suspension of each Settlement Class Member's driver's license. As for Waters and Sangfield and the five additional claims brought on behalf of the class by them, their experience of entering into a new agreement to make a down payment followed by monthly payment thereafter as a condition of having their license reinstated, and executing a standard consent form to the DMV is alleged to be typical of Settlement Class Members. As a result, collectively the claims of the Named Plaintiffs are typical of the claims of the class members they seek to represent.

*Adequacy:* Rule 23(a)(4) of the Federal Rules of Civil Procedure also requires that a named plaintiff provide fair and adequate protection of the interests of the class. "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the

class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty*, 513 F.3d 1314, 1323 (11th Cir. 2008) (internal citations omitted).

The Named Plaintiffs in this matter have no interests antagonistic to the class they seek to represent. Named Plaintiffs have participated fully in discovery, gathered voluminous documents in support of Named Plaintiffs' complaints, reviewed drafts, attended multiple mediations, and/or participated in settlement. (Dkt. 200-1, ¶ 22). From the inception of this case, Named Plaintiffs have been focused on ending the practice of allegedly inappropriate driver's license suspensions. *Id.*

The Named Plaintiffs have also met their burden by retaining counsel experienced in class action litigation. (Dkts. 193-5; 193-6; 200-1). Class counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action. *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D. Fla. 2010).

Therefore, Plaintiffs and Class Counsel satisfy Rule 23(a)(4). Fed. R. Civ. P. 23(g)(1)(A)-(B) and Rule 23(e)(2)(A) are also satisfied.

### B.    The Settlement Class Also Satisfies the Rule 23(b)(3) Requirements

Rule 23(b)(3) requires a "direct impact" of common issues of law and fact "on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotations omitted). Rule 23(b)(3) predominance is readily

satisfied because Plaintiffs contend that the legal claims all arise from (1) the common practice of seeking and obtaining driver's license suspension or (2) the practice of demanding a down payment in exchange for reinstatement of driving privileges. (Dkt. 193, pp. 9–10). Any individual issues, are greatly outweighed by common issues. For these reasons, the Court should certify the Settlement Class.

## V.    THE NOTICE PROGRAM AND CLAIMS PROCESS SATISFY DUE PROCESS AND RULE 23

In addition to having personal jurisdiction over Plaintiffs, who are parties to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they were sent Notice and received due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The Notice Program implemented by the Claims Administrator conforms with the procedural and substantive requirements of due process and Rule 23 that provide that settlement class members are sent notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice process mechanics are within the Court's discretion, subject to broad reasonableness standards imposed by due process.

Here, following the Court's approval of the Notice Program, the Claims Administrator directed notice to the Settlement Class via direct mail. *See* ALCS Decl. ¶¶ 5. A Long Form Notice was also available to the Settlement Class on the Settlement Website. *Id.* ¶ 5. To ensure notice reached as many Settlement Class Members as possible, the Claims Administrator performed reasonable address traces for the initial Notice and to re-mail any Notices returned undeliverable. *Id.* at ¶ 4. All of the Notices

included important Settlement information, including how to opt-out or object, when

a claim form for additional relief would be sent and where to submit it, and where to

find more information about the Action or to contact Class Counsel. (Dkt. 197-1)[3].

The Notice fully apprised the Settlement Class of their rights. *Id.* Additionally,

the Notice Program was designed to satisfy Rule 23 and due process considerations.

(Dkt. 193, pp. 24–26 ). As Rule 23 requires, the Notices generally described the

Proposed Settlement in sufficient detail to alert those with adverse viewpoints to

investigate and come forward to be heard, and the Notices contained all of the critical

information required to apprise Settlement Class members of their rights. *Id.* Thus, the

Notice Program was adequate to allow Settlement Class Members with adverse

viewpoints to come forward and be heard.

Here, notice reached approximately 94.99% of the Settlement Class. *Id.* at ¶ 7.

Notice here was the best notice that is practicable and is equivalent or superior to

notice campaigns approved in similar class actions.

## VI.   **APPLICATION FOR ATTORNEYS' FEES AND COSTS**

In an effort to achieve full transparency with the Settlement Class and in

addition to the attorney's fees and costs disclosed in the Notice Program, Plaintiffs

filed their Motion for Attorney's Fees and Costs and Approval of the Class

Representative Award on June 27, 2025, well before the objection deadline. (Dkt. 200).

---

[3] At the preliminary approval hearing, the Court requested a change to the language
on the outside of the notice envelope. The Parties complied in the subsequent filing at
docket entry 197-1, which replaced docket entry 193-8.

For the reasons set forth in the Motion, Plaintiffs' Counsel's requested $1,500,000 in attorneys' fees and $100,000 in litigation costs are due to be approved, as well as the $10,000 service award to be made to each Named Plaintiff.  *Id.*

## VII.  <u>CONCLUSION</u>

Based on all of the foregoing, the Named Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Final Approval. In accordance with the Settlement Agreement (Dkt. 193-4, ¶ 57), this Motion requests the entry of a Final Order and Judgment that:[4]

(a)     certifies the Settlement Class for settlement purposes only;

(b)     finds the Court has personal jurisdiction over all Settlement Class Members and subject matter jurisdiction to approve th[e] Agreement and all Exhibits thereto;

(c)     gives final approval to the Proposed Settlement and directs the Parties and counsel to comply with and consummate the terms of the Agreement;

(d)     finds that Class Counsel and the Named Plaintiffs adequately represented the Settlement Class;

(e)     finds that the terms of th[e] Agreement are fair, reasonable, and adequate to the Settlement Class Members;

(f)     finds that the notice set forth in th[e] Agreement (i) constituted the best practicable notice under the circumstances; (ii) was reasonably calculated to apprise potential Settlement Class Members of the pendency of

---

[4] Prior to the Final Fairness Hearing, and as a courtesy to the Court, Plaintiffs will provide the Court with a Word version of a proposed order and judgment granting final approval that has been approved by all parties.

the Action, their right to object to or exclude themselves from the Proposed Settlement, and to appear at the Final Approval Hearing; and (iii) constituted due, adequate, and sufficient process and notice to all Persons entitled to receive notice;

(g)    finds that the Class Action Fairness Act Notice provided by the Claims Administrator on behalf of Defendants complied with 28 U.S.C. § 1715(b);

(h)    finds that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, neither share in nor are bound by the Final Order and Judgment;

(i)    provides that the Named Plaintiffs, all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, attorneys, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have submitted a Claim Form, and regardless of whether they have received actual notice of the Proposed Settlement, have conclusively compromised, settled, discharged, and released all Released Claims against Defendants and the Released Parties, and are bound by the provisions of th[e] Agreement;

(j)    dismisses all claims in the Action on the merits and with prejudice, and without fees or costs except as provided herein, and entering final judgment thereon;

(k)    determines the amount of the Attorneys' Fees Award to Class Counsel;

(l)    appoints American Legal Claims Services, LLC as the Claims Administrator; and

(m)    appoints Gregory Holder (retired) as the Special Master.

23

## <u>LOCAL RULE 3.01(g) CERTIFICATE OF CONFERRAL</u>

While Defendants do not adopt or agree to all the allegations and arguments set forth herein, Defendants do not oppose the relief sought, provided that the proposed Final Order and Judgment submitted to the Court comports with the terms of the Settlement Agreement.

Dated: August 11, 2025

**VARNELL & WARWICK, P.A.**

<u>/s/ Jeffrey L. Newsome, II</u>
Jeffrey L. Newsome, II; FBN: 1018667
Janet R. Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
Pamela G. Levinson, FBN: 538345
Christopher J. Brochu; FBN: 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
*jnewsome@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*plevinson@vandwlaw.com*
*cbrochu@vandwlaw.com*
*ckoerner@vandwlaw.com*

**LANGER GROGAN & DIVER, P.C.**

Irv Ackelsberg (Pro Hac Vice)
Mary Catherine Roper (Pro Hac Vice)
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Telephone: (215) 320-5660
iackelsberg@langergrogan.com
mroper@langergrogan.com

***Attorneys for Plaintiff, and on behalf of all others similarly situated***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 11, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Jeffrey L. Newsome, II
Jeffrey L. Newsome, II
